## MARY ELIZABETH SWALLOW

*v.*

## CHARLES S. SWALLOW.

[Submitted March 16th, 1915. Decided March 31st, 1915.]

1. A final decree of divorce will not be amended by inserting a clause for alimony, when such relief was neither prayed for in the petition nor in any manner presented to the court for judicial determination at the time of the entering of the decree.

2. When permanent alimony is allowed in the final decree it may be permitted to start from the filing of the bill. When no provision is made for permanent alimony in the final decree, and thereafter application is made for the same under the statute (*Comp. Stat. p. 2035*), it will be ordered to run from the date of the application, and not from the date of the final decree.

*Mr. James J. McGoogan,* for the petitioner.

*Mr. William M. Jamieson,* for the defendant.

BACKES, V. C.

The final decree of divorce in this case was entered April 13th, 1905. It contained no provision for permanent alimony. The petition prayed for a divorce and for "such further and other relief as shall seem meet." There was no specific prayer for alimony. Application is now made to open the final decree and to amend it by inserting a clause for alimony, and, if that be denied, for an order allowing permanent alimony, to date from the final decree.

Under the first alternative, the petitioner sets up that she was ignorant of the absence of any provision for permanent alimony in the final decree until recently, and that she always understood she was entitled to alimony of $5 a week after the entry of the final decree of divorce; all of which is undoubtedly true. An

order for alimony *pendente lite,* at $5 a week, had been made, and, doubtless, her conception of the legal effect of this order led her to so understand. *Swallow* v. *Swallow, 92 Atl. Rep. 872.* But I do not perceive upon what theory the petitioner's ignorance of the terms of the final decree, or her erroneous impressions of her rights thereunder, can be entertained as causes for disturbing and reading into it a relief which was neither prayed for nor in any manner presented to the court for judicial determination. This case is materially different in principle from *Lynde* v. *Lynde, 54 N. J. Eq. 473; 55 N. J. Eq. 591,* relied upon by the petitioner's counsel. There the petition prayed for alimony, but, through the inadvertence of counsel, the final decree failed to reserve for future consideration the question of alimony. The chancellor ordered the decree amended by adding that the petitioner "shall have the right to apply to this court at any time hereafter at the foot of this decree for reasonable alimony," &c., upon the ground that the subject-matter of the amendment had been before the court for consideration, and would have been incorporated in the decree had attention been called to it, and that the amendment was necessary to give full expression to the court's judgment.

The next question is, can a decree for alimony be made now to extend back to the date of the final decree of divorce? The common, and, perhaps, true, practice is to allow permanent alimony from the date of the final decree, when the adjudication thereof is a part of, or incidental to, the main litigation. In *Holmes* v. *Holmes, 29 N. J. Eq. 9,* the final decree of divorce ordered the matter to a master, to report the amount of permanent alimony. Upon the coming in of the master's report, a supplemental decree for alimony was made, to run from the date of the final decree.

The rule has sometimes been departed from, and the alimony has been permitted to start from the filing of the bill. In *Wheeler* v. *Wheeler,* not reported (docket 32, page 312), a bill for maintenance, Vice-Chancellor Emery, in a memorandum, stated that he would advise a decree that the permanent alimony commence from the date of the filing of the bill. In *Hammer* v.

*Hammer,* not reported (docket 24, page 561), on a petition for divorce *a mensa et thoro,* Vice-Chancellor Pitney advised a consent decree for alimony from the date of the filing of the petition, with permission to compound the alimony for the past and then future at $1,100, and ordered that upon its payment the defendant be forever discharged. There was no decree of divorce entered. In *Burr* v. *Burr, 7 Hill 207,* on a bill for separation from bed and board on the grounds of cruelty, the chancellor made a decree allowing alimony from the time of the filing of the bill. On appeal, affirming the decree, Nelson, Ch. J., said: "This is a matter of discretion, depending upon the special circumstances of the case. * * * Perhaps in practice the ecclesiastical courts in England usually date the allowance from the time of the decree; but this is not binding upon us here. I confess, it seems to me, that in point of consistency and propriety the allowance should commence at the time of filing the bill. The case was then made out. All the facts existed at that time upon which the alimony was allowed; and if the respondent is entitled to it at all, she was as much entitled to it then as at any subsequent period." In *Forrest* v. *Forrest, 6 Duer 102, 149,* on a decree of divorce *a vinculo,* the court of appeals observed "that it was not erroneous to allow alimony from the time when the suit was commenced if, under all the circumstances, that seemed just to the court." In *Cooke* v. *Cooke, 2 Phillim. 40,* Sir John Nicholl said: "In respect to the time from which the alimony is payable, namely, from the return of the citation, this, I apprehend, is contrary to the rule of the court and to the reason of the thing. * * * I can see no ground to depart from the ordinary rule of these courts, by carrying back the permanent alimony beyond the date of the sentence. It is clear, from several cases, that the true rule of the court is to decree permanent alimony from the date of the sentence." In *Durant* v. *Durant, 1 Hagg. 528,* sentence was pronounced in 1825, and the cause, after appeal and vexatious delay, was remitted in 1828, when it was ordered that the permanent alimony be allotted from the date of the sentence. In *Kempe* v. *Kempe, 1 Hagg. 532,* alimony was allowed to commence from the date of the sentence, the judge remarking that

he would interfere with the usual course of practice if he decreed its commencement to date from an earlier period. See, also, *Covell* v. *Covell, 2 Prob. Div. 411,* citing, with approval, *Cooke* v. *Cooke, supra.*

It must not be overlooked that in the English cases the alimony decrees were all made adjunctly to the principal litigation. The practice which prevails in this court is in this respect in entire harmony with the course laid down by these authorities, as for example: If, forthwith upon the entering of a final decree, application should be made for permanent alimony, undoubtedly, it would be ordered to run from the date of sentence —that is, the decree *nisi*. But the situation here is that the parties have rested upon the final decree which was entered nearly ten years ago. That decree is to be regarded as having determined all the matters then involved in the suit between the parties, even as to alimony, if that subject could have been entertained under the prayer for general relief, without additional notice to the defendant. The petitioner now applies under the power reserved by the statute in all divorce actions for permanent alimony, by proceedings distinct and separate from, though dependent upon, the original cause. Now, for the first time, the questions are presented whether the defendant should pay alimony, and, if so, how much? These questions are to be determined after notice, upon proof of contemporaneous facts and circumstances regarding the husband's financial capacity, present and future, and it seems to me that the correct practice is, if permanent alimony be allowed, it should go back no further than the time the petition for it was filed. This was the course taken in the case of *Lynde* v. *Lynde, supra.* There the application to open the decree was made on February 11th, 1896, and upon the decree being amended it was referred to a master to ascertain the husband's capacity, upon whose report it was adjudged that the defendant pay alimony "at the rate of $80 per week from the 11th day of February, 1896, to the date hereof," the accumulations of which amounted to $7,840, and also the sum of $60 a week permanent alimony thereafter. The same practice was followed by Vice-Chancellor Stevenson in *McKensey* v. *McKensey, 65 N. J. Eq. 633.*

I will allow permanent alimony at the rate of five dollars ($5) a week. The petitioner, through her counsel at the hearing, expressed herself as satisfied with this amount. The defendant is married and has two children. His earning capacity does not exceed $1,000 a year. Recently, he inherited from his father about $3,000, and it was not until then that the petitioner moved in the matter. This sum, under all the circumstances, is quite reasonable, and a decree may be entered for that amount, to run from January 4th of this year, the date of the filing of the petition. The defendant will give a bond of one thousand dollars ($1,000) to secure the payment of the alimony. The matter of counsel fees may be brought up on the presentation of the decree.