**K.R., Petitioner**

v.

**DEPARTMENT OF PUBLIC WELFARE, Respondent.**

Commonwealth Court of Pennsylvania.

Argued May 6, 2008.

Decided June 4, 2008.

Erica N. Burns, Pittsburgh, for appellant.

Jeffrey P. Schmoyer, Pittsburgh, for appellee.

BEFORE: FRIEDMAN, Judge, and COHN JUBELIRER, Judge, and COLINS, Senior Judge.

OPINION BY Judge COHN JUBELIRER.

K.R. petitions for review of an order of the Secretary of Public Welfare (DPW), which upheld the order of the Bureau of Hearings and Appeals (BHA) dismissing K.R.'s appeal of her request for expungement of the child abuse findings against her. DPW and BHA relied on the factual findings made by a Juvenile Hearing Master (Master) in a dependency hearing, which a trial court judge adopted,[1] in upholding a founded report that K.R. mentally abused her children, M.F. and A.F. (collectively, minors). DPW and BHA did not conduct an administrative hearing in the matter. On appeal, K.R. argues that: (1) her due process rights to notice and opportunity to be heard at an administrative hearing were violated; and (2) DPW erred by failing to apply the correct standard necessary to change the status of a child abuse report from "indicated" to "founded" and by specifically finding that there had been a judicial adjudication that the abuse was perpetrated by K.R. when the trial court in the dependency hearing made no such finding.

The relevant facts are as follows. K.R. is the mother of two children, M.F., born April 23, 1997, and A.F., born August 15, 1994. Washington County Children and Youth Services (WCCYS) conducted an investigation and subsequently filed an indicated report of abuse on December 28, 2005, showing M.F. as the victim of "mental injuries" and K.R. as the perpetrator. The indicated report states that M.F. was

---

1. We note that Judge Mark E. Mascara of the Court of Common Pleas of Washington County (trial court) adopted the Recommendation of the Juvenile Hearing Master (Master) in its entirety. Therefore, for the purposes of this opinion, this Court will refer to the Recommendation of the Master as the trial court opinion and will refer to the factual findings of the Master as the findings of the trial court.

"suffering from a spastic colon due to fear and stress of the father inculcated by [K.R.]." (Child Protective Service Investigation Report of M.F., December 28, 2005.)[2] Following an investigation relating to M.F.'s sister, A.F., WCCYS filed another indicated report of abuse on February 1, 2006, showing A.F. as the victim of "mental injuries" and K.R., again, as the perpetrator. The indicated report states that A.F. "is suffering from anxiety and depression due to fear and stress of the father inculcated by [K.R.]." (Child Protective Service Investigation Report of A.F., February 1, 2006.)[3] After learning

2. The Child Protective Service Investigation Report relating to M.F. states:

In December 2004, a gastroenterologist diagnosed the child with a spastic colon and withholding behavior; on December 5, 2005, the child's pediatrician noted that the child's constipation and withholding behaviors are secondary to emotional abuse by father. The pediatricians [sic] primary source of information about the father is the mother, however, the child did report fear of the father, including fear that the father would have him taken from the mother. The child was interviewed on December 6, 2005 and cited one overheard phone call in his life in which father made a threatening statement to his mother about his mother. He acknowledged that all othere [sic] awareness of reasons to fear his father come from his mother or his sister. His sister was interviewed and acknowledged memory of one parental domestic quarrel approximately five to five and one half years ago; and no direct experience of threats made by the father. Mother is currently scheduled for a custody contempt hearing as she refuses to allow phone contact and visitation, apart from four to five supervised visits in the fall of 2005. The visitation provider and the child deny that the child was ever dragged to a visit or urinated in fear of the father. The child does, however, report fear that the father might have poisoned food he brought to a visit. The Agency defers to medical belief that the child's physical problems have an emotional cause, but is naming the mother as the perpetrator of such emotional abuse. The pediatrician has stated that the mother cannot be ruled out as the alleged perpetrator. It is believed she has been inculcating the child with fear of the father, much as she has reported to a variety of medical, educational, and other professionals that the father will harm her and the children. It should be noted that there is an absence of any third-party documentation of witnessed threats, conflicts, or injuries. The report is INDICATED for emotional abuse as the child has a documented medical condition arising from emotional stress caused by the parent.
(Child Protective Service Investigation Report of M.F., December 28, 2005.)

3. The Child Protective Service Investigation Report relating to A.F. states:

The child was interviewed in December 2004 and January 2005 and cited recall of one incident in which her father may have punched her mother approximately 5–5½ years prior, but cited no incident or comment which provoked fear for her own safety. The child noted then and since that her father would call the home, but she did not speak to nor visit him. She noted that she believed he was stalking her and might kidnap her and said she had plans to prevent that. On April 29, 2005 a psychologist diagnosed the child as suffering from anxiety and depression and noted throughout the evaluation the child's fear of her "stepdad" (legal father) kidnapping her, putting her in foster care, or hurting her and her family. The child's report to the psychologist noted no direct contact with the father as the basis for fear; and noted that the child did not report hearing father's threats, but reported being told by the mother. The child reported having been afraid of the father for five years and depressed for a year. The child has spoken with caseworker and supervisor on several occasions since December 16, 2005 and has never reported direct experience with the father as having led to the fear, worry, and depression. She acknowledges having believed that the father wanted to ruin her life, place her in foster care, and make her life miserable. She acknowledged worrying "all the time" that he would hurt her, her brother, or her mother. She acknowledged suspicion, at a visit in the fall of 2005, that the father might have poisoned

that WCCYS filed indicated reports against her, K.R. made a request to expunge the information contained in the Central Registry of Child Abuse.

In the interim, a judicial dependency hearing was held on August 30, 2006, before a Juvenile Hearing Master who heard the testimony of 19 witnesses, including two physicians and a licensed psychologist. As background, the Master noted that the mother, K.R., and the father have been involved in a contested custody case involving the minors from September 1, 2000 until the present and that the minors currently reside in foster care. The Master then made several factual findings spanning 18 pages. Relevant to the case at bar, the Master found as fact that:

[K.R.] has systematically inculcated both children with fabricated, unsubstantiated and exaggerated concerns of their father which created an unhealthy fear that their father would harm them. This non-ending behavior by [K.R.] caused [M.F.] to suffer a spastic colon and withholding behaviors and resulted in [A.F.] being diagnosed with depression and anxiety. [K.R.] has further harmed the children by subjecting them to examinations by psychiatrists, physicians and counselors, in part, to further legitimize her quest to prevent the children from having any relationship with their father.

. . . .

The most compelling evidence that [K.R.] is the source of the [minors] problems is their testimony and their vastly improved condition after being removed from [K.R.'s] care. Foster care placement and supervised visits have virtually eliminated the [minor]'s fears of their father. A.F. calls [the father] Dad. The [minors] excelled in the . . . School District. M.F. suffers from only mild constipation. A.F. is generally much happier and no longer suffers from headaches.

. . . .

The [minors] are adjudicated dependent because clear and convincing evidence has been presented that the [minors] are without proper parental care or control from either parent necessary for their physical, mental or emotional health and such care and control from either parent is not immediately available.

(Trial Ct. Op. at 18–20.) On the same day, Judge Mark E. Mascara approved the Master's Recommendation adjudicating the minors dependent.

On August 31, 2006, K.R. received notice that, after an administrative review of the indicated reports, the Bureau of County Children and Youth Programs found that the reports were accurate and being maintained in a manner consistent with the Child Protective Services Law (Law).[4] K.R. then requested an administrative hearing via letter dated September 5,

---

food he brought to a visit. She reported her sibling first suspected it, but she agreed it was possible. The child was placed in foster care December 16, 2005 and has had successful visits with the father. Although she is cautious in her relationship with him, she reports no fear of him. (She does to some extent blame him for the placement.) It is believed the mother has been inculcating the child with the fear of the father, resulting in the child's condition of anxiety and depression. Not only does the child cite no first-hand experience with father leading to fear; there is no third-party corroboration of witnessed threats. The report is INDICATED for emotional abuse as the child had a documented mental health diagnosis resulting from an evaluation in which the child cited fear and worry as the chief complaint and symptoms.
(Child Protective Service Investigation Report of A.F., February 1, 2006.)

**4.** 23 Pa.C.S. §§ 6301–6386.

2006.[5] Although not part of the record, K.R. asserts in her brief that on or about January 3, 2007, K.R. was notified that her "Indicated" status was changed to "Founded" based on the finding by the trial court via the dependency adjudication. (K.R.'s Br. at 9.) On January 8, 2007, the BHA issued a Rule and Order to Show Cause as to why the matter should not continue to a hearing. On February 27, 2007, the BHA then issued a Rule and Order to Show Cause directing K.R. to show why her appeal should not be dismissed. Subsequently, on July 16, 2007, the BHA entered an Order dismissing K.R.'s appeal. In support of its decision to dismiss K.R.'s appeal, the BHA stated:

> Specifically, an Order issued by the [trial court] in which the Court found Appellant "systematically inculcated both [minors] with fabricated, unsubstantiated, and exaggerated concerns of their father which created an unhealthy fear that their father would harm them". Further, the Court found the non-ending behavior by Appellant caused M.F. to suffer a spastic colon and withholding behaviors, and A.F. was diagnosed with depression and anxiety. The Court also found Appellant "further harmed the [minors] by subjecting them to examinations by psychiatrists, physicians, and counselors, in part, to further legitimize her quest to prevent the [minors] from having any relationship with their father". Finally, the subject [minors], A.F. and M.F., were adjudicated dependent [minors] because there was clear and convincing evidence the [minors] were "without proper parental care or control from either parent necessary for their physical, mental, or emotional health and such care and control from either parent is not immediately available". See 23 Pa.C.S.A. § 6303 for definition of "Founded"; see also *R.F. v. DPW*, [8]01 A.2d 646 (Pa.Commw.2002), and *J.G. v. DPW*, 795 A.2d 1089 (Pa. Commw.2002) (which describes the justification request to change the status of a child abuse report from "Indicated" to "Founded").

(BHA Order, July 16, 2007.) After receiving this Order, K.R. promptly filed a Request for Reconsideration, which was granted on August 20, 2007. Upon reconsideration, the Secretary entered a Final Order upholding the BHA's Order of July 16, 2007. It is from the Final Order that K.R. now petitions this Court for review.[6]

---

**5.** K.R. contends in her brief that she notified the BHA that she was appealing the Order of the trial court finding the minors dependent. She explains that, shortly thereafter, she received notice that her appeal was stayed for ninety days due to the pending dependency appeal before the Superior Court and canceling her February 13, 2007 hearing due to the stay. She explains that, at the cessation of the ninety-day stay period, K.R. was directed to submit a detailed description of the status of her appeal. She further explains that:

> Due to what K.R. contends to be the neglect or misconduct of her former attorney, an appeal of the dependency proceedings was never effectuated and the appeal was dismissed on December 19, 2006, and the *Application for Reconsideration* was denied on January 26, 2007. However, K.R. did not become aware of this dismissal or the reasons therefore until April 20, 2007. During a meeting with K.R., the undersigned counsel reconstructed the events that led to the dismissal of the appeal. Based on this neglect or misconduct, K.R., through the undersigned counsel, filed a *Motion to Reinstate the Appeals and For Special Relief.* The motion was denied on April 30, 2007.

(K.R.'s Br. at 8–9.)

**6.** Our "scope of review in expunction proceedings is limited to a determination of whether constitutional rights were violated, whether errors of law were committed, or whether necessary findings of fact are supported by substantial evidence." *E.D. v. Department of Public Welfare,* 719 A.2d 384, 387 (Pa.Cmwlth.1998) (citing Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704).

On appeal, K.R. separates her brief into two distinct issues arguing that: (1) DPW erred and violated K.R.'s federal and state due process right to notice and opportunity to be heard by upholding the July 16, 2007 Order of the BHA dismissing her appeal without giving her a statutorily mandated administrative hearing; and (2) DPW erred by failing to apply the correct standard necessary to change the status for a child abuse report from "indicated" to "founded," specifically when the trial court did not make a finding that K.R. abused the minors. We will address each issue in turn.

K.R. first argues that pursuant to Sections 6338[7] and 6341[8] of the Law, she was denied a statutory right to an "administrative hearing on the merits with opportunity to argue, to cross-examine witnesses, to present evidence, and to challenge any evidence against her ... regarding care and custody of her children." (K.R.'s Br. at 10.)[9] K.R. con-tends that a finding of child abuse affects her ability to work, her status in society, and her constitutional right to parent her children. In support of this proposition, K.R. relies on *Troxel v. Granville*, 530 U.S. 57, 65, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000) (stating that the Fourteenth Amendment's Due Process Clause has "a substantive component that 'provides heightened protection against government interference with certain fundamental rights and liberty interests,'" including parents' fundamental right to make decisions concerning the care, custody, and control of their children) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 720, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997)) and several other United States Supreme Court cases for the same proposition. (*See* K.R.'s Br. at 11 n. 2.) Thus, K.R. argues that, at the very least, she must be given an administrative hearing so that she can present evidence to refute the report of child abuse.

7. Section 6338 of the Law states that:

> When a report of suspected child abuse or a report under Subchapter C.1 (relating to students in public and private schools) is determined by the appropriate county agency to be a founded report or an indicated report, the information concerning that report of suspected child abuse shall be expunged immediately from the pending complaint file, and an appropriate entry shall be made in the Statewide central register. Notice of the determination must be given to the subjects of the report, other than the abused child, and to the parent or guardian of the affected child or student along with an explanation of the implications of the determination.... The notice shall also inform the recipient of his right, within 45 days after being notified of the status of the report, to appeal an indicated report, *and his right to a hearing if the request is denied.*
> 23 Pa.C.S. § 6338(a) (emphasis added).

8. Section 6341 of the Law states that when the Secretary of DPW refuses a request to expunge an indicated report of child abuse:

> the perpetrator or school employee shall have the right to a hearing before the secretary or a designated agent of the secretary to determine whether the summary of the indicated report in the Statewide central register should be amended or expunged on the grounds that it is inaccurate or that it is being maintained in a manner inconsistent with this chapter. The perpetrator or school employee shall have 45 days from the date of the letter giving notice of the decision to deny the request in which to request a hearing. The appropriate county agency and appropriate law enforcement officials shall be given notice of the hearing. The burden of proof in the hearing shall be on the appropriate county agency. The department shall assist the county agency as necessary.
> 23 Pa.C.S. § 6341(c).

9. It seems as though K.R. meant to say that she was denied the opportunity to confront witnesses and evidence regarding "abuse of her children," and not "care and custody of her children."

■ The first issue is whether the Secretary of DPW can rely on the findings made in a dependency proceeding, and not in a separate administrative hearing, to establish that K.R. abused the minors. In deciding this issue, it is essential to understand the purpose of a dependency hearing held pursuant to the Juvenile Act (Act), 42 Pa.C.S. §§ 6301–6375, and the consequences that an adjudication of dependency may have on a petitioner's request for expungement of child abuse findings.

■ The purpose of a dependency adjudication is to correct a situation in which children lack proper parental care and control necessary for their physical, mental or emotional health. *Matter of C.R.S.*, 696 A.2d 840, 842 (Pa.Super.1997). The Superior Court of Pennsylvania has stated:

> A dependent child is one who "is without proper parental care or control. . . ." 42 Pa.C.S. § 6302. . . . If a child is adjudicated dependent under the Juvenile Act, he or she cannot be separated from his or her parents absent a showing that the separation is clearly necessary. "A decision to remove a child from his or her parents' custody must be reconciled with the 'paramount purpose' of preserving family unity."

*Matter of Read*, 693 A.2d 607, 609 (Pa.Super.1997) (citations omitted). Thus, before a court can make a determination that a child is dependent because of child abuse, the burden is on the petitioner to show that the juvenile was abused by clear and convincing evidence. *Matter of C.R.S.*, 696 A.2d 840 (Pa.Super.1997); Section 6341(c) of the Act, 42 Pa.C.S. § 6341(c).[10] " 'The standard of clear and convincing evidence means testimony that is so clear, direct,

weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue.' " *Matter of Read*, 693 A.2d 607, 609 (Pa.Super.1997) (quoting *Matter of Sylvester*, 521 Pa. 300, 304, 555 A.2d 1202, 1203–04 (1989)). "Without such evidence the child must be returned promptly to his or her parents." *Id.* (quoting *Interest of J.M.*, 438 Pa.Super. 409, 652 A.2d 877, 880 (1995)). While clear and convincing evidence is required to prove child abuse in a dependency adjudication, the court's findings as to the identity of the abusers need only be established by prima facie evidence. *Interest of J.R.W.*, 428 Pa.Super. 597, 631 A.2d 1019, 1024 (1993) (dependency adjudication); *see also J.B. v. Department of Public Welfare*, 898 A.2d 1221, 1226 (Pa.Cmwlth.2006) (expungement proceeding).

Pennsylvania courts have decided several cases in which the factual findings from a dependency adjudication have been the basis on which a court has upheld a founded report of abuse. In *J.R.W.*, the parents, V.F. and A.W., appealed from an order adjudicating their child, J.R.W., a dependent child, issuing a finding of abuse naming either or both parents as perpetrators of such abuse, and awarding care and custody of the child to CYS for placement in a foster home. *Id.* at 1020. The trial court found that J.R.W. was unquestionably an abused "shaken baby" and had suffered life-threatening injuries while in the care and custody of her parents. *Id.* at 1021. Furthermore, although the trial court was unable to determine whether one or both of J.R.W.'s parents were the perpetrators of the abuse, it found that

---

10. Section 6341(c) of the Act states that, "[i]f the court finds from clear and convincing evidence that the child is dependent, the court shall proceed immediately or at a postponed hearing, which shall occur not later than 20 days after adjudication if the child has been removed from his home, to make a proper disposition of the case." 42 Pa.C.S. § 6341(c).

J.R.W. sustained the life-threatening injuries while in her parents' care. As such, the trial court found by clear and convincing evidence that J.R.W. was without proper parental care and control. *Id.*

On appeal, while appellants in *J.R.W.*, A.W. and V.F., did not contest the finding of dependency or the placement of their child out of their home, they appealed the trial court's finding that they were responsible for the abuse of their daughter. *Id.* Initially, appellants argued that the Law did not provide a means to adjudicate abuse. They contended that it was inappropriate to invoke the Act to make such an adjudication because the Act is geared entirely to the reuniting of the family and may not be a basis upon which the finding of abuse by a parent can be made. *Id.* In the alternative, the appellants argued that if the Act affords the trial court jurisdiction to make a finding of abuse, the identity of the abuser may not be established on a prima facie basis, but must be established by clear and convincing evidence. *Id.* The appellants argued that the trial court's finding that they were the abusers could not establish the basis for a "founded" report of child abuse. Specifically, the appellants contended that, because Section 6381(d) of the Law, 23 Pa.C.S. § 6381(d), provides that abuse may be proven by a standard of prima facie evidence, such a finding cannot be the basis for a finding of abuse under the Act, which requires proof with clear and convincing evidence.

In addressing the appellants' issues, the Superior Court explained the purposes of both the Law and the Act as follows:

> Undoubtedly the purpose of the Child Protective Services Law is to bring about quick and effective reporting of suspected child abuse so as to serve as a means for providing protective services competently and to prevent further abuse of the children while providing rehabilitative services for them and the parents. 23 Pa.C.S. § 6302(b). To the degree possible, the Law also is geared to the stabilization of the family where appropriate. The Law does not provide for legal determinations of abuse; it is mainly a vehicle for reporting abuse and bringing quickly into play those services (including court hearings) available through county protective service facilities for the care of the child.
>
> The Act, however, is a procedural act which establishes jurisdiction in the courts to legally intervene and make findings of dependency which, in the context of this case, also includes child abuse. While the primary goal of the Act is to preserve and unite the family, it goes far beyond that opening statement of purpose. 42 Pa.C.S. § 6301(b)(1). The Act also requires the court to remove children from the family environment when necessary for their welfare or in the interest of public safety. In keeping with its purpose, the Act provides a complete procedural vehicle by which children are taken into custody, investigations are made, petitions are filed, hearings are held and remedial work is done to aide the family, to protect the child and, where necessary, to place the child out of the reach of abusive and neglecting parents. The Law and the Act must be read in pari materia.

*J.R.W.*, 631 A.2d at 1021–1022. The Superior Court further explained that:

> the one and only available resource for custody, change of custody or detention of a child who is suspected of being abused under the Law is the Juvenile Court pursuant to the Juvenile Act. This is so fundamentally necessary to the operation of the Law that the allegations of lack of jurisdiction by the Juve-

nile Court to make findings of child abuse appear to be totally spurious. *Id.* at 1023. In summation, the Superior Court held that:

it is clear that under the Act, while incorporating the later additional legislation relating to child abuse provided under the Law, the Juvenile Court has the jurisdiction and the right to adjudicate child abuse and when such an adjudication is made pursuant to the Law, *a "founded report" may be lodged with the Department of Welfare determining that the parents are the persons responsible for the abuse.*

*Id.* at 1025 (emphasis added).

Similarly, in *J.G. v. Department of Public Welfare,* 795 A.2d 1089 (Pa.Cmwlth. 2002), an indicated report of child abuse was filed against J.G. Following a dependency hearing, the status of the report was changed from "indicated" to "founded." In the dependency adjudication, the trial court found:

In the case at bar, the testimony is uncontradicted, unequivocal and well-beyond the clear and convincing standard that A.M. was abused. The fact that there is no direct evidence to implicate the mother is not dispositive. It is clear from the testimony that the injuries that were inflicted occurred sometime while this child was under the supervision and control of both parents. Moreover, the agency has established by clear and convincing evidence that the child is presently without proper parental care or control and that such care or control is not immediately available. Therefore, the Court will issue a decree adjudicating this child as dependent.

*J.G.,* 795 A.2d at 1093. As a result of this change in status from "indicated" to "founded," the Bureau did not hear J.G.'s appeal as to the indicated report. It further concluded that J.G. had no right of appeal from the founded report. J.G. then appealed to this Court.

On appeal, this Court found that although a perpetrator in an indicated report of child abuse has a right to appeal a denial of an expungement request under the Law, "there is no corresponding provision within the Law for perpetrators named in a 'founded report' of child abuse. This statutory omission does not mean that a named perpetrator in a founded report does not have any right of appeal." *J.G.,* 795 A.2d at 1092. We further found that a founded report of child abuse is an adjudication and that, under Section 504 of the Administrative Agency Law, 2 Pa.C.S. § 504, "[n]o adjudication of a Commonwealth agency shall be valid as to any party unless he shall have been afforded reasonable notice of a hearing and an opportunity to be heard." *Id.* While we held that there was a right to appeal, we specifically noted that in a criminal proceeding, where there is an entry of a guilty plea or *nolo contendere* or a finding of guilt to a criminal charge involving the same factual circumstances involved in the allegation of child abuse, an appeal would "in most instances, constitute a collateral attack of the adjudication itself, which is not allowed." *J.G.,* 795 A.2d at 1093. This holding was made subject to a distinction, which we explained as follows:

Where, however, a founded report is based upon a judicial adjudication in a non-criminal proceeding, such as a dependency action, in which the court enters a finding that the child was abused, but does not issue a corresponding finding that the named perpetrator was responsible for the abuse, a named perpetrator is entitled to an administrative appeal before the secretary to determine whether the underlying adjudication of child abuse supports a 'founded report' of abuse. We emphasize that the scope

of the appeal is for the limited purpose of determining whether or not the underlying adjudication supports a founded report that the named perpetrator is responsible for the abuse and would not permit a named perpetrator to collaterally attack or otherwise challenge the underlying judicial adjudication.

*Id.* at 1093. This Court held in *J.G.* that because the dependency adjudication relied upon by DPW merely indicated a finding that A.M. was abused, and did not contain a definitive finding that J.G. was guilty of that abuse, J.G. was entitled to an administrative hearing to determine whether the adjudication of abuse constituted sufficient evidence to support a founded report that J.G. committed that abuse. *Id.* Accordingly, we reversed the order of DPW and remanded to DPW for purposes of conducting an administrative hearing to determine if sufficient evidence existed to support a founded report that J.G. committed abuse. *Id.* at 1094.

Based on the principles set forth in *J.R.W.* and *J.G.*, it is clear that the Secretary may rely on the factual findings of the trial court in a dependency adjudication to dismiss an appeal for a request for expungement. Here, similar to *J.G.*, K.R.'s appeal is from a "founded" report of child abuse and, thus, the issue before this Court is one of law regarding the due process owed. Accordingly, if the findings made in the dependency proceeding in this case establish that K.R. abused the minors, it is unnecessary to provide K.R.

with a separate administrative hearing to establish that K.R. abused the minors.[11]

 The next issue is whether the findings made in the dependency proceeding in this case establish that K.R. abused the minors. K.R. argues that DPW erred by applying the wrong standard necessary to change the status of a child abuse report from "indicated" to "founded" because, although the trial court made reference to the indicated report of child abuse, the trial court did not make specific factual findings that the minors had been abused and that the abuse was perpetrated by K.R. K.R. asserts that the trial court did not evaluate and make findings as to whether the minors were abused but, rather, the trial court solely evaluated whether the minors should be declared dependent because of lack of parental care and control under the Act. Because K.R. was never deemed an abuser, but merely incapable of providing parental control, K.R. contends that the factual basis for the child abuse report has never been challenged. Thus, relying on *R.F. v. Department of Public Welfare*, 801 A.2d 646 (Pa. Cmwlth.2002), K.R. contends that she has a due process right to a hearing to determine whether or not the report should be expunged. We disagree.

In *R.F.*, Berks County Children and Youth Services (CYS) received a report that R.F. was suspected of sexually abusing his daughter, D.F., and subsequently conducted an investigation. *Id.* at 647. CYS then referred the matter to law en-

**11.** *See also* Section 6303(a) of the Law, 23 Pa.C.S. § 6303(a), which provides that a *judicial determination* that a child has been abused and that the alleged perpetrator was, in fact, the abuser is sufficient for the entry of a "founded report" of abuse. Specifically, Section 6303(a) of the Law defines a "founded report" as follows:

A child abuse report made pursuant to this chapter if there has been *any judicial adjudication* based on a finding that a child who is a subject of the report has been abused, including the entry of a plea of guilty or nolo contendere or a finding of guilt to a criminal charge involving the same factual circumstances involved in the allegation of child abuse.

23 Pa.C.S. § 6303(a) (emphasis added).

forcement, and criminal charges were filed. CYS then requested DPW to file an indicated report of child sexual abuse of D.F. by R.F. *Id.*

> Under a plea bargain agreement, R.F. pled *nolo contendere* [1] to count 4 of the complaint, Endangering the Welfare of a Child, 18 Pa.C.S. § 4304, and was given probation.
>
> . . . .
>
> 1. A plea of *nolo contendere* is treated as if R.F. pled guilty to the crimes charged.

*Id.* Subsequently, CYS filed an amended report with DPW changing the status of the report from "indicated" to "founded" in accordance with 23 Pa.C.S. § 6303. *Id.* at 647–48. R.F. appealed the change from indicated to founded contending that he did not plead guilty to sexually abusing his daughter in his *nolo contendere* plea. *Id.* at 648. The BHA dismissed the appeal because the Law does not provide for appeals from founded reports, only indicated reports. *Id.*

On appeal to this Court, we noted our decision in *J.G.*, stating:

> While we held that there was a right to appeal, we specifically noted that in a criminal proceeding, where there is an entry of a guilty plea or *nolo contendere* or a finding of guilt to a criminal charge involving the same factual circumstances involved in the allegation of child abuse, an appeal would "in most instances, constitute a collateral attack of the adjudication itself, which is not allowed."

*Id.* at 649 (citation omitted).

Applying the principles set forth in *J.G.* to the facts in *R.F.*, this Court held that there was not a "collateral attack on the adjudication because the issue is whether the plea was one upon which a 'founded report' could be based." *Id.* We noted that R.F. entered a plea of *nolo contendere* to the criminal charge against him, which he contended was unrelated to child sexual abuse. *Id.* This Court concluded that "[b]ecause R.F. [was] not challeng[ing] the criminal *nolo contendere* plea but only challenge[d] the designation of a founded status, he [was] not collaterally attacking the trial court's determination but only the characterization given to that plea." *Id.* Therefore, we vacated the decision of DPW and remanded the matter to DPW for a hearing as to whether the *nolo contendere* plea was properly characterized. *Id.*

We disagree with K.R. that she is entitled to an administrative hearing and that *R.F.* controls the outcome. In the case at bar, 19 witnesses testified at the dependency adjudication, including K.R., the minors, several doctors, and caseworkers. The trial court made numerous factual findings as to the circumstances surrounding the minors' environment and abuse that they endured. For example, the trial court found that DPW filed an indicated report of sexual abuse of A.F. by one of K.R.'s former paramours, and that the district attorney filed criminal charges. The trial court went on to find that K.R. called 911 to have an on-call CYS caseworker paged and that she informed the caseworker that "father planned to get custody of the children and then hand them over to [the former paramour], a child molester [and that] father would be paid by [former paramour] and this time tomorrow night [A.F.] was going to be molested and 'get it up the ass again.'" (Trial Ct. Op. at 10.) The trial court also found that K.R. continued to instill fear and guilt into the minors about their father wanting to kill her, harm the minors, and take the minors away from their house to be placed in foster care. Additionally, the trial court found that K.R. called the authorities on several occasions alleging that the minors were being mistreated by the foster moth-

er. However, upon further investigation, the authorities concluded that every single allegation was false and that the minors were not being mistreated. (Trial Ct. Op. at 12–16.)

While it is true that the trial court did not specifically use the words that "M.F. and A.F. were *abused*" or that "K.R. *abused* M.F. and A.F.," the trial court did find that K.R.'s actions caused M.F. to suffer a spastic colon and that K.R.'s actions resulted in A.F.'s depression. (Trial Ct. Op. at 18–19.) Pursuant to Sections 6303(b)(1)(i) and 6303(a) of the Law, 23 Pa.C.S. § 6303(b)(1)(i) and § 6303(a), the above conditions from which the minors suffered satisfy the statutory definition of "child abuse."[12] Additionally, the trial court found that K.R. "harmed" the minors, which would also fall within the definition of abuse. Moreover, the trial court found that K.R. was the perpetrator of the abuse by finding that it was K.R. who "caused" the children to suffer the harms. The trial court reiterated that "[t]he most compelling evidence [is] that [K.R.] is the source of the [minor]'s problems." (Trial Ct. Op. at 19.)

DPW is correct that, pursuant to this Court's decision in *J.G.*, K.R. is not entitled to an administrative proceeding as it would be a collateral attack on the factual findings from the dependency adjudication. *J.G.*, 795 A.2d at 1093. K.R. had a full and fair opportunity to present evidence and to cross-examine all witnesses at the dependency adjudication. *R.F.* is not controlling and is distinguishable from the case at bar because, there, the facts surrounding R.F.'s *nolo contendere* plea needed to be presented to determine whether R.F. was specifically pleading guilty to sexual abuse. Here, however, K.R. and DPW were both given a full and fair opportunity to present their evidence, and K.R. was given a full and fair opportunity to rebut evidence of abuse and neglect. To allow K.R. an administrative hearing to confront the very same witnesses and to challenge the very same evidence of abuse, which she has already been given an opportunity to refute, would be a collateral attack on the trial court's factual findings, which is prohibited pursuant to *J.G.* Therefore, due process does not require an administrative hearing, as the material facts found in the dependency proceeding cannot be disputed.[13]

12. Section 6303 of the Law defines "child abuse" as follows:

> (1) The term "CHILD ABUSE" shall mean any of the following:
> (i) Any recent act or failure to act by a perpetrator which causes *nonaccidental serious physical injury* to a child under 18 years of age.
> (ii) An act or failure to act by a perpetrator which causes *nonaccidental serious mental injury* to or sexual abuse or sexual exploitation of a child under 18 years of age.
> 23 Pa.C.S. § 6303(b)(1)(i),(ii) (emphasis added). The term "serious physical injury" is defined as "[a]n injury that: (1) causes a child severe pain; or (2) significantly impairs a child's physical functioning, either temporarily or permanently." 23 Pa.C.S. § 6303(a). The term "serious mental injury" is defined as:

> [a] psychological condition, as diagnosed by a physician or licensed psychologist, including the refusal of appropriate treatment, that: (1) renders a child chronically and severely anxious, agitated, depressed, socially withdrawn, psychotic or in reasonable fear that the child's life or safety is threatened; or (2) seriously interferes with a child's ability to accomplish age-appropriate developmental and social tasks.
> 23 Pa.C.S. § 6303(a).

13. K.R. also argues that, while the record is devoid of any evidence that she is the perpetrator of any form of abuse, the record is replete with evidence that the father has a long-standing history of drug and alcohol abuse and is the perpetrator of severe domestic violence against K.R., which can affect the minors, and evidence that the father sexually abused A.F. K.R. asserts that she has taken

Accordingly, the Secretary's Final Order is affirmed.

## ORDER

**NOW,** June 4, 2008, the order of the Secretary of Public Welfare in the above-captioned matter is hereby **affirmed.**

steps to obtain the transcripts from the trial court's adjudication and dispositional hearings in the matter but that, through no fault of her own, she has been unable to procure the transcripts. K.R. contends that full access to the transcripts is required for her to properly understand the allegations against her and to provide any evidence necessary to counter and challenge those allegations. K.R. argues that the transcripts from the trial court's disposition of the dependency hearing, on which the finding at issue is based, are the crux of the case and, without the whole record, she is denied the opportunity to effectively present her case, which is in direct violation of her state and federal due process rights.

While this Court recognizes K.R.'s frustration in trying to obtain the transcripts from the dependency hearing, we note that the transcripts are only relevant to an appeal of the trial court's order adjudicating the minors dependent. K.R. is appealing from a "founded" report of child abuse and, thus, this Court's review is not one of substantial evidence but one of law regarding K.R.'s due process rights. Because the pertinent factual findings of abuse were made by the trial court, and there was no effective appeal of the trial court's order, pursuant to *J.G.*, K.R. may not collaterally attack the trial court's order adjudicating the minors dependent. Thus, we agree with DPW that the presence or absence of that transcript is irrelevant for purposes of the case at bar.