IN THE COMMONWEALTH COURT OF PENNSYLVANIA

J.P., : SEALED CASE
          Petitioner :
 :
 v. :
 :
Department of Human Services, : No. 720 C.D. 2016
          Respondent : Submitted: September 2, 2016


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
               HONORABLE ANNE E. COVEY, Judge
               HONORABLE JOSEPH M. COSGROVE, Judge


OPINION BY
JUDGE COVEY                         FILED: November 21, 2016


       J.P. petitions this Court for review of the Pennsylvania Department of Human Services (DHS), Bureau of Hearings and Appeals' (BHA) April 13, 2016 order adopting the Administrative Law Judge's (ALJ) recommendation dismissing J.P.'s administrative appeal (Decision). The sole issue before the Court is whether BHA erred in holding that J.P. was not entitled to a hearing under Section 6341(a)(2) of the Child Protective Services Law (Law), 24 Pa.C.S. § 6341(a)(2).

       On April 17, 2015, the Lycoming County Children and Youth Services (CYS) received a report alleging that J.P. physically abused J.E. (Child). From approximately April 2015 through February 2016, J.P. was the Child's father's paramour. On June 10, 2015, CYS completed its child abuse investigation and filed an indicated report[1] of child abuse naming J.P. as a perpetrator of abuse. J.P. filed an

---

[1] Section 6303(a) of the Law defines an "indicated report" as a report issued by DHS or a county agency where it is "determine[d] that substantial evidence of the alleged abuse by a perpetrator exists based on any of the following: (i) [a]vailable medical evidence[;] (ii) [t]he child protective service investigation[; or,] (iii) [a]n admission of the acts of abuse by the perpetrator." 23 Pa.C.S. § 6303(a); *see also* Section 3490.4 of DHS' Regulations, 55 Pa. Code § 3490.4.

expunction appeal to listing her as a child abuse perpetrator on the ChildLine & Abuse Registry (ChildLine Registry).[2] Thereafter, a Lycoming County Juvenile Court (Juvenile Court) Master held a hearing, and found that J.P. caused physical abuse to the Child based on the same incident alleged in CYS' indicated report. On July 17, 2015, the Lycoming County Common Pleas Court (trial court) affirmed the Master's July 14, 2015 findings. J.P. did not appeal from the Master's July 14, 2015 findings or the trial court's July 17, 2015 order.

On January 7, 2016, CYS filed a Motion to Dismiss J.P.'s expunction appeal (Motion) with BHA because the status of the report was changed from "indicated" to "founded"[3] based on a trial court finding. However, BHA denied the Motion because CYS failed to provide verification of the trial court's finding. On

---

[2] Section 3490.4 of the DHS' Regulations defines "ChildLine" as

> [a]n organizational unit of [DHS] which operates a Statewide toll-free system for receiving reports of suspected child abuse established under [S]ection 6332 of the [Law] (relating to establishment of Statewide toll-free telephone number), refers the reports for investigation and maintains the reports in the appropriate file. . . .

55 Pa. Code § 3490.4. "The ChildLine Registry is maintained in accordance with the [Law.]" *In re: S.H.*, 96 A.3d 448, 450 n.2 (Pa. Cmwlth. 2014).

[3] Section 6303(a) of the Law defines a "founded report" as follows:

> A child abuse report involving a perpetrator that is made pursuant to this chapter, if any of the following applies:
>
> (1) There has been a judicial adjudication based on a finding that a child who is a subject of the report has been abused and the adjudication involves the same factual circumstances involved in the allegation of child abuse. The judicial adjudication may include any of the following:
> . . . .
> (iii) A finding of dependency under [Section 6341 of the Juvenile Act,] 42 Pa.C.S. § 6341 (relating to adjudication)[,] if the court has entered a finding that a child who is the subject of the report has been abused.

23 Pa.C.S. § 6303(a); *see also* Section 3490.4 of DHS' Regulations, 55 Pa. Code § 3490.4.

2

January 27, 2016, CYS renewed its Motion. On January 29, 2016, BHA issued a rule for J.P. to show cause why the appeal should proceed to a hearing. J.P. responded that since she was not a party to the Juvenile Court matter, the Juvenile Court's finding of abuse did not apply to her. On February 24, 2016, an ALJ hearing was held. On April 12, 2016, the ALJ found that because J.P. read her paramour's July 14, 2015 hearing notice prior to the hearing, and understood that CYS' abuse allegation against her would be at issue during the hearing, but she did not attempt to take part in the July 14, 2015 Juvenile Court hearing, J.P.'s appeal of the founded report should be dismissed. On April 13, 2016, BHA adopted the ALJ's recommendation in its entirety.[4] J.P. appealed to this Court.[5]

J.P. argues that BHA erroneously dismissed her expunction appeal and that she is entitled to a hearing with respect to whether she abused the Child. CYS rejoins that BHA properly dismissed J.P.'s appeal, and the issues before the Court are: (1) whether J.P. had notice and an opportunity to be heard on the allegations that she abused the Child; and (2) whether the status of the report was properly changed from "indicated" to "founded."

> Initially,

> a founded report of child abuse is an adjudication and that, under Section 504 of the Administrative Agency Law, 2 Pa.C.S. § 504, '[n]o adjudication of a Commonwealth agency shall be valid as to any party **unless he shall have been afforded reasonable notice of a hearing and an opportunity to be heard**.' *Id.*

---

[4] J.P. filed a Request for Reconsideration which BHA denied.

[5] CYS intervened.

"Our 'scope of review in expunction proceedings is limited to a determination of whether constitutional rights were violated, whether errors of law were committed, or whether necessary findings of fact are supported by substantial evidence.'" *K.R. v. Dep't of Pub. Welfare,* 950 A.2d 1069, 1073 n.6 (Pa. Cmwlth. 2008) (quoting *E.D. v. Dep't of Pub. Welfare*, 719 A.2d 384, 387 (Pa. Cmwlth. 1998)).

*K.R. v. Dep't of Pub. Welfare,* 950 A.2d 1069, 1077 (Pa. Cmwlth. 2008) (emphasis added). Here, although the ALJ concluded: "[J.P.] was afforded reasonable notice of the July 14, 2015 hearing at the [Juvenile Court,]" ALJ Dec. at 4, this Court disagrees.

> In an administrative proceeding, the essential elements of due process are notice and an opportunity to be heard. *Wills v. State* [*Bd.*] *of Vehicle* [*Mfrs.*], *Dealers and Salespersons,* . . . 588 A.2d 572 ([Pa. Cmwlth.] 1991). '**Notice, the most basic requirement of due process, must** '**be reasonably calculated to inform interested parties of the pending action, and the information necessary to provide an opportunity to present objections**. . . .' ' *Noetzel v. Glasgow, Inc.,* . . . 487 A.2d 1372, 1377 ([Pa. Super.] 1985) . . . (quoting [*Pa.*] *Coal Mining Ass*[*'n*] *v. Ins*[*.*] [*Dep't*], . . . 370 A.2d 685, 692-693 ([Pa.] 1977)).

*Grossman v. State Bd. of Psychology*, 825 A.2d 748, 762 (Pa. Cmwlth. 2003) (emphasis added). "Due process of law requires notice to be given **to the respondent** so that [s]he may adequately prepare h[er] defense in such cases." *Straw v. Pa. Human Relations Comm'n,* 308 A.2d 619, 621 (Pa. Cmwlth. 1973) (emphasis added).

> J.P. testified at the ALJ hearing:
>
> JUDGE: How did you learn of the July 14, 2015 hearing in front of the Master?
>
> A. When [my paramour] received that piece of paper, the court hearing appointment paper that [the trial court] sent out court-ordering [my paramour] and [the Child] to both attend the hearing, that's how I found out about it.
>
> JUDGE: **Did you receive anything from the** [c]**ourt saying to attend the hearing**?
>
> A. **No, I did not**. I did not receive a separate letter. My name was never put on the letter that [my paramour] and [his Child] got. We've had a couple of hearings. My name has never been on the paperwork, and it never mentioned that I was able to attend these hearings. If I was allowed to,

4

you know, I'd be able to. Because nine times out of ten, in family court they just want the immediate family.

I myself am not considered a stepmother. I am not considered anything to the [C]hild or to [my paramour] in the eyes of [CYS] and in the eyes of the [c]ourt. They put me down as paramour, which basically, I guess, is a fly-by-the-seat girlfriend. That's how they look at me, that I'm nothing to the [C]hild. So that's one reason why I never attended these hearings, because they're not looking at me as part of the [C]hild's life.

JUDGE: **Did you ever receive an Order from the [Juvenile Court] or from the [trial court] in regard to this matter**, or ---

A. **No**.

. . . .

JUDGE: Now, when the Master issued her --- **after the Master issued [her] decision, did she send a copy of her decision to you**?

A. **No. No, I have not received any paperwork from [CYS]. I have not received any paperwork from the Master**. . . .

Notes of Testimony, February 24, 2016 (N.T.) at 21-24 (emphasis added). Upon further inquiry from the ALJ, J.P. continued:

JUDGE: And [J.]P., correct me if I have this wrong. Your argument is that you were not at the hearing in front of the Master, you did not have --- you did not defend yourself in the allegations of abuse committed against the [Child], though you were aware of the hearing prior to the Master's decision, and that you did not appeal the Master's decision; is that correct?

A. **Yes, sir. I did not know I was allowed to appeal. I didn't know I was allowed to do anything**. I was told specifically from [CYS] themselves that any matter pertaining to anything that has to do with the [C]hild, I am not allowed to ask any questions, and the father is the one that's supposed to be doing all of this.

5

And I had no --- we had no idea, that I was allowed to do anything to try to get information that I was able to obtain. As soon as the caseworker came into the house --- that was the last contact that I had with the caseworkers. They were always contacting the father. They didn't want to ---. What am I trying to say?

JUDGE: They were primarily sending correspondence or information to the parents, and you're not a parent?

A. Yes. Like, if I had any questions, I wasn't allowed to contact [CYS] or anything like that to ask them a question. The father had to do it. Even though the hearing was pertaining to --- had to do with me too, I wasn't allowed to ask any questions. I was never ---.

N.T. at 26-28 (emphasis added). Finally at the conclusion of the hearing, J.P. reiterated:

JUDGE: I'll admit, I've never had this exact situation come up before. I've had situations where parties went to the dependency hearing and were prohibited from testifying or defending themselves of allegations of abuse. But this one, [J.]P. didn't attempt to get into the hearing to defend herself.

A. **If I knew I was allowed to attend, I would have**. I wouldn't have a problem because, I mean, I'd like to testify and give my evidence that I have, and I know that we have witnesses that would testify on my behalf, and there's new evidence that I can have come up.

N.T. at 31-32 (emphasis added).

In the instant case, it is uncontested that the only notice provided regarding the dependency hearing was the notice to J.P.'s paramour. The fact that J.P. read *his* notice, does not transform *his* notice to *her* notice. This conclusion is especially true here, where J.P. testified that she "was told specifically from [CYS] themselves that any matter pertaining to anything that has to do with the [C]hild, I am not allowed to ask any questions" and she assumed she would not be permitted to participate in the dependency hearing because she was not the Child's parent. N.T. at

6

27. While we recognize that "[DHS] may rely on the factual findings of the trial court in a dependency adjudication to dismiss an appeal for a request for expungement[,]" *K.R.*, 950 A.2d at 1078, because J.P. did not receive notice prior to the adjudication, she did not receive the requisite due process for a valid adjudication. *Grossman.*

For all of the above reasons, BHA's order is reversed, and the matter is remanded to BHA to provide J.P. a hearing.


_____
ANNE E. COVEY, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

J.P.,                                  :
                    Petitioner         :
                                       :
           v.                          :
                                       :
Department of Human Services,          :    No. 720 C.D. 2016
                    Respondent         :

## O R D E R

AND NOW, this 21st day of November, 2016, the Pennsylvania Department of Human Services, Bureau of Hearings and Appeals' (BHA) April 13, 2016 order is reversed and the matter is remanded to BHA to provide J.P a hearing consistent with this opinion.

Jurisdiction is relinquished.


_____
ANNE E. COVEY, Judge