ELIZABETH P. PARMLY, petitioner,

*v.*

J. FRANK PARMLY, defendant.

[Decided September 21st, 1938.]

*Messrs. Smith & Slingerland* (by *Mr. Frederick W. Smith*), for the petitioner.

*Mr. Otto A. Stiefel,* for the defendant.

GROSMAN, A. M.

This is an application by the petitioner to reopen a final decree of divorce entered herein on the 1st day of March, 1920, and to amend the decree *nisi* so as to include a provision for alimony.

The petitioner obtained a decree *nisi* on the ground of desertion on December 20th, 1918. An allowance of alimony at the rate of $50 per month was included therein. Thereafter, the parties entered into an agreement bearing date October 20th-23d, 1919, purporting to settle said alimony in gross. This agreement was submitted to our late chancellor, Edwin R. Walker, for his consideration and he is alleged to have approved the same without any formal hearing of the parties, but merely by an inspection of the alimony provisions of the decree *nisi* and of the agreement itself. On the 31st day of December, 1919, a decree was entered modifying the decree *nisi*, by deleting therefrom the provision for the payment of alimony. Subsequently said decree *nisi*, as modified, was made final by a decree entered herein on the 1st day of March, 1920.

The parties rested under said "alimony agreement" until November 12th, 1937, some seventeen years, when the petitioner, finding herself on the verge of destitution, initiated the instant proceedings. The defendant has filed an answer in lieu of plea, setting up said "alimony agreement" and the decree of this court, allegedly approving same. He contends that this court is powerless to grant the petitioner any relief in the premises because:

1. A final decree having been entered herein, the present proceeding is in the nature of a bill of review and as such cannot be initiated by petition, but only by a strict bill of review, which will not lie at this late date, the time for appeal having expired.

2. A final decree having been entered in this cause, the defendant had and has a right to rely upon its finality and this court is without power to amend its decree at this late date.

3. An agreement to settle the petitioner's alimony in gross having been entered into between the parties with the approval of the court, the petitioner has no right to ask for any further allowance and this court is without power to make her any award whatsoever.

The answer in lieu of plea was supplemented by the defendant's motion to strike the petition, challenging the jurisdiction of this court to entertain petitioner's application. In the present state of the case, the defendant admits, for the purpose of this motion, all the facts properly pleaded. I shall consider the issues presented herein *seriatim:*

A decree in a matrimonial suit awarding alimony is at all times subject to the control of this court for the purpose of either increasing or reducing the amount allowed, in accordance with the altered circumstances of the parties. It differs in this respect from a final decree in a property suit. A matrimonial decree is final merely in respect to the status of the parties, but is at all times open to modification in respect to alimony.

As far back as the year 1838, Chancellor Pennington, in the case of *Richmond* v. *Richmond, 2 N. J. Eq. 90* (at *p. 94*), held:

"My impression, from looking at the statute is, that this court has the power at any time, on a changing of circumstances, to vary this allowance, by increasing or diminishing it; as the act speaks of 'such maintenance and allowance as to the said court shall, from time to time, seem reasonable and just.' * * *"

This rule has been consistently followed through the years. In *Dietrick* v. *Dietrick, 99 N. J. Eq. 711; 134 Atl. Rep. 338,* Vice Chancellor Bentley held that a final decree awarding alimony may be modified at any time.

Nor is an application to modify a final decree in respect to alimony to be considered proceedings in the nature of a bill

of review. A petition similar to the instant one is sufficient to invoke consideration of the issue.

In the case of *Barrett* v. *Barrett, 41 N. J. Eq. 139,* Chancellor Runyon entertained an application "by petition" to modify a final decree for the payment of alimony.

In *Rigney* v. *Rigney, 62 N. J. Eq. 8; 49 Atl. Rep. 460,* Chancellor Magie, in considering an application to modify a final decree of divorce, in respect to alimony (at *p. 13*), held:

"Application to vary a decree in this respect may be made by petition in the cause, *Snover* v. *Snover, supra; S. C. 2 C. E. Gr. 85.* Such an application is not one involving a review of the propriety of a decree as made. * * *"

It was further held in this case that an application for such modification would be entertained even though the decree for alimony does not reserve to the parties a right to apply for a modification of the amount awarded, when their circumstances have changed.

In *Swallow* v. *Swallow, 84 N. J. Eq. 411; 93 Atl. Rep. 885,* Backes, V. C., entertained and granted an application for alimony ten years after the entry of a final decree; and Ingersoll, V. C., in the case of *Sweeney* v. *Sweeney, 95 N. J. Eq. 192* (at *p. 194*) ; *122 Atl. Rep. 877,* held that:

"* * .* Even if the final decree is silent on the subject, application may be made concerning alimony at any time after final decree and after enrollment of the decree. (Cases cited.)"

The Divorce act itself specifically provides (*1 Rev. Stat. p. 269 title 2:50-37*) as follows:

"Pending a suit for divorce or nullity, *or after decree of divorce,* the court of chancery may make such order touching the alimony of the wife * * * as the circumstances of the parties and the nature of the case shall render fit, reasonable and just * * *."

I must therefore conclude that a final decree of divorce awarding alimony is at all times subject to modification by this court in respect to alimony, as the circumstances of the parties may require and equity and good conscience dictate; and that proceedings to effect such modification may be initiated by petition and not by bill of review.

My conclusions on the defendant's first contention are dispositive of his second argument.

The defendant's third and last contention, that the petitioner having obtained an agreed sum in gross, in lieu of alimony is now without further rights in the premises; and that this court is without power to afford her relief, must be likewise decided adversely to its proponent.

It will be observed that the decree *nisi*, as originally entered herein on December 20th, 1918, awarded the petitioner alimony at the rate of $50 per month "having regard to other arrangements made between the parties for the support and maintenance of the said petitioner." The decree modifying said decree *nisi* was entered on the 31st day of December, 1919, a year later, while the parties were still husband and wife. *Sobel* v. *Sobel, 99 N. J. Eq. 376; 132 Atl. Rep. 603.* This last mentioned decree merely provides in its ordering part for the deletion from the original decree *nisi* of the provision for alimony. It is wholly devoid in its decretal portion of any approval of the alleged alimony composition agreement between the parties. It is true that by way of recital, the decree of December 31st, 1919, states that:

"It appearing to the court upon inspection of an agreement between the above named parties, bearing date the 20th day of October, 1919, and duly acknowledged by the said Elizabeth P. Parmly *that she has consented to the modification of the decree nisi in the above* entitled cause in the manner hereinafter set forth and that the said J. Frank Parmly has, by said agreement, provided for the payment of a sum in gross to be paid to the said Elizabeth P. Parmly in lieu of alimony and maintenance, both now and at all times in the future and that such agreement should receive the approval of this court."

But there the order stops. It is to be observed that the modifying decree of December 31st, 1919, does not in fact give any approval whatsoever to the agreement between the parties. The recitals contained in the decree are not a necessary part thereof and do not amount to an approval. They may in fact be omitted entirely. *Bull* v.

*International Power Co., 84 N. J. Eq. 209; 93 Atl. Rep. 86.*
In this case Walker, C., after reciting with approval *Dan. Ch. Pl. Pr. (6th Am. Ed.)*, classification of the component parts of a decree (*p. 214, supra*—at *p. 215*), further endorses that learned author's statement to this effect:

"The ordering or mandatory part of the decree contains the specific directions of the court upon the matter before it."

Recitals in a decree are permissible to explain briefly the reasons upon which the decretal or mandatory part of the decree is based, but they are not a substitute therefore. Standing alone, such recitals are of no legal effect. There is a marked difference between what a court thinks should be done and what the court actually does.

The subject of alimony is one of peculiar concern to this court. It is an award made to a wife who has established by a preponderance of evidence that she has been grievously injured by her husband. Such an allowance is grounded in public policy to the end that a husband who has violated his solemn marital obligations by conduct amounting, under our law, to a marital offense shall nevertheless, be compelled to support his outraged spouse. The purpose of alimony has been excellently defined by Bentley, V. C., in *Dietrick* v. *Dietrick, 99 N. J. Eq. 711,* wherein (at *p. 713*), he quotes with approval the opinion of Sir J. P. Wilde, in *Sidney* v. *Sidney, 4 Swab. & T. 178,* to the following effect:

"* * * A very large number of the divorce cases since the act have been petitions by the wife for cruelty and adultery, or desertion and adultery. And among certain classes of the community a very common case indeed is that of a young husband who, either not agreeing with his wife or getting tired of her shortly after marriage, endeavors to shake her off. In this endeavor he generally begins by treating her with neglect and contempt, often half starves her, often beats her, often insults her by open adultery, and ends by deserting her and cohabiting with another woman. That the wife should desire a divorce in such case can hardly be a matter of surprise, and that she should obtain it is but bare justice. But is the very thing that the husband wants, too.

He has succeeded in shaking off the obligations of marriage, and that by his own voluntary breach of them. And if he can part with his wife at the door of the divorce court without any obligation to support her, and with full liberty to form a new connection, his triumph over the sacred permanence of marriage will have been complete. * * * No man should, in my judgment, be permitted to rid himself of his wife, by ill treatment, and at the same time escape the obligation of supporting her."

Pitney, J., speaking for the court of errors and appeals in the case of *Lynde* v. *Lynde, 64 N. J. Eq. 736; 52 Atl. Rep. 694,* referred to the allowance of permanent alimony in cases of absolute divorce "as a means of enforcing the continuing duty of support which the husband owed to the wife and of which he was not permitted to absolve himself by his own misconduct, although that misconduct resulted in the dissolution of the marriage."

So it has been held that the parties may not, by a settlement agreement, withdraw from the chancellor the duty to award alimony on subsequently granting a divorce for adultery. *Irwin* v. *Irwin, 98 N. J. Eq. 454; 131 Atl. Rep. 304; affirmed, 100 N. J. Eq. 347;* that it is not a property right, subject to assignment, *Greenberg* v. *Greenberg, 99 N. J. Eq. 461; 133 Atl. Rep. 768; Lynde* v. *Lynde (Court of Errors and Appeals), 64 N. J. Eq. 763; 52 Atl. Rep. 694;* it is not a dischargeable debt in bankruptcy, *Bolton* v. *Bolton, 86 N. J. Law 69;* even the court itself may not award alimony in a gross sum, nor in a portion of the real estate of the husband, without the consent of the parties. *Calami* v. *Calami, 24 N. J. Eq. 440; 25 N. J. Eq. 548; Greenberg* v. *Greenberg, supra.*

It is clearly the public policy of our state that the chancellor shall at all times retain his power to fix alimony unimpeded, to the end that he may reduce or increase the allowance as the circumstances of the parties may require, so that the wife shall be supported by the husband in accordance with his means and station in life, and on the other hand, that the husband shall, if his circumstances alter for the worse, be subject to no unjust exactment.

The only exception to the general rule that alimony is and at all times must remain wholly within the control of the chancellor seems to be that where the parties, on a divorce being granted, have entered into a composition agreement for the settlement of alimony in gross; and such agreement has been submitted to the court for approval; and the court thereupon has found upon investigation, not inferentially but factually, that the provisions for the support of the wife are for her benefit and adequate for her support, then and then only may it be said that the wife is not presently entitled to a further allowance by way of alimony. *Sobel* v. *Sobel, supra; Greenberg* v. *Greenberg, supra; Irwin* v. *Irwin, supra.*

The legal duty imposed upon the husband by law to support his wife cannot, even by this means, be avoided.

In *Greenberg* v. *Greenberg, supra,* the court had before it a practically similar situation. There a composition agreement attempting to settle alimony in gross was entered into between the parties. The sum agreed upon was in full satisfaction of any and all claims for present and future alimony by and on behalf of the petitioner. It seems that upon application for said order the solicitors of both parties and the petitioner personally, appeared; and that she expressed her complete willingness to accept the sum in lieu of any present or future alimony for her support and maintenance. An order was thereupon made by Chancellor Walker, upon the advice of one of his vice-chancellors, directing the payment of said moneys. Subsequently upon a change of circumstances, application for alimony was made. Walker, C., held, at page 468:

"* * * The statute contemplates that a wife cannot preclude herself by an agreement from invoking the aid of the court to obtain further maintenance, and that the subject shall be continuously dealt with according to the varying circumstances of the parties, *the petitioner before me is, undoubtedly, entitled to seek an award of alimony for herself from the defendant, as well as maintenance for the child, notwithstanding the order for payment to her of a sum in gross*

*in lieu of alimony.* However, this petitioner, having appeared before the vice-chancellor, who advised the order for settlement, and 'expressed her complete willingness to accept the sum of two thousand six hundrd and eighty-seven dollars ($2,687) in lieu of her right to present and future alimony for her support and maintenance,' she will, doubtless, have a heavier burden to carry in showing that she is entitled to have that settlement set aside and further alimony granted to her.

"In view of the law of alimony as established by the cases, if a husband enters into a composition agreement with his wife, whereby alimony in gross is agreed upon in discharge of his future and continuing liability to support her, nevertheless, in changing circumstances, he may be visited with an order for the payment of alimony in excess of any gross sum agreed upon between them in their settlement; and so it would seem if the sum settled upon the wife, through extravagance or misfortune, is dissipated, and she thereby becomes indigent. And it must be true, in any case, that if a wife either loses or squanders any gross sum settled upon her in lieu of alimony, and is driven to seek support from the overseer of the poor, her husband would be liable for her support in proceedings before a magistrate, in exoneration of the liability of the municipality.

"The result reached on this branch of the case is that the petitioner may proceed by application to the court itself for an award of alimony, notwithstanding the composition therefore reached by the parties and sanctioned by the court, for while in *Sobel* v. *Sobel* it was held that there would seem to be *no good* reason why alimony in gross should not be enforced, when assented to by the parties and the court of chancery, if the provisions for the wife were found to be suitable after the court has looked into the arrangement and their surroundings and found the provisions to be for the benefit of the wife and her adequate support, yet *the order approving the settlement in this case does not recite or adjudge that the provisions for the wife were suitable and found to be for her benefit and adequate for her support,* but, on the contrary, the order only recites that the wife appeared and 'expressed

her complete willingness to accept the sum * * * in lieu of her right to any present and future alimony for her support and maintenance;' *and in the ordering part it simply adjudged that the defendant pay to the petitioner the sum agreed upon, in full satisfaction of any and all claims for present and future alimony by or on behalf of the petitioner.* It is one thing for a wife to express her willingness to accept a certain sum in lieu of alimony, and quite another for the court to ascertain and adjudge that the sum is suitable and adequate for her support."

It will be observed that Chancellor Walker laid great stress upon the actual finding by the court of the required elements for the approval of an agreement settling alimony in gross and the incorporation thereof in the ordering part of the decree. The decree entered in the instant case on the 31st day of December, 1919, while the parties were still husband and wife, the final decree not having been entered until March 1st, 1920, contained no such adjudication. In fact said decree fails to make mention of any of the elements required to give a composition agreement of this nature validity, even by way of recital. It merely recites that the agreement between the parties had been inspected by the court, *that the petitioner had consented to the modification of the decree nisi in the manner therein set forth;* that the defendant had by said agreement provided for a payment of a sum in gross, to be paid to the petitioner in lieu of alimony and maintenance both now and at all times in the future; and that such agreement should receive the approval of this court.

In the *Greenberg Case,* Chancellor Walker comments on the fact that the wife appeared and "expressed her complete willingness to accept the sum * * * in lieu of her right to any present and future alimony for her support and maintenance" and adverts to this fact:

"It is one thing for a wife to express her willingness to accept a certain sum in lieu of alimony, and quite another for the court to ascertain and adjudge that the sum is suitable and adequate for her support."

The language in the *Greenberg* order was much more in

line with the requirements of the law for the approval of an alimony composition agreement. In the case at bar we have not even the semblance of an approval. It is significant that the decree allegedly approving the alimony composition agreement in the instant case was signed by Chancellor Walker personally. Much emphasis is laid upon this fact by the respondent's counsel. I am unable to attach any import to this circumstance. Judicial determinations are to be taken from judgments and decrees as made. It is the duty of counsel to prepare these pleadings in accordance with the determination of the court and when such decrees are entered they are presumed to fully set forth such adjudications.

It is also to be noted that Chancellor Walker in the *Greenberg Case* (at *p. 468,* ¶ *3*), holds specifically that even if an agreement such as this had been approved by the court, nevertheless "in changing circumstances, he may be visited with an order for the payment of alimony in excess of any gross sum agreed upon between them in their settlement; and so it would seem if the sum settled upon the wife through extravagance or misfortune is dissipated, and she thereby becomes indigent. * * *"

It is true that by way of example the learned chancellor cites the instance of a wife who has dissipated her settlement and is about to become a public charge, in which event her husband would be required to support her in exoneration of the municipality. Nevertheless, he does not limit the husband's liability, after a settlement of alimony in gross, to this one instance. A careful reading of his opinion indicates clearly that the husband's obligation to support his wife upon divorce is a continuing one from which he may not escape even though he has attempted by an alimony composition agreement to rid himself of his future obligations to his wife. To this effect is the case of *Walker* v. *Walker, 118 N. J. Eq. 309.* It is true that in that case the decree was one for separate maintenance, but this fact is not significant. Whether alimony is allowed under a decree of separate maintenance, *a mensa et thoro* or *a vinculo,* makes no difference. The husband's duty to support his wife is not predicated upon the nature

of the decree entered against him, but is grounded in the marital status and flows as an incident therefrom. *McGuinness* v. *McGuinness* (*Court of Errors and Appeals*), *72 N. J. Eq. 381; 68 Atl. Rep. 768;* reversing *71 N. J. Eq. 1.* See, also, *Baumgarten* v. *Baumgarten, 107 N. J. Eq. 274; 151 Atl. Rep. 606.*

Seemingly, the only effect of a judicially approved alimony composition agreement is to foreclose a wife from securing any further allowance except in case of absolute and unavoidable destitution. In this event, the chancellor may, under his reserved power, make the petitioner a further award for her maintenance. Under such circumstances the grant made is one of grace and not of right. The burden of showing destitution is, of course, upon the petitioner and her application will be scrutinized with the utmost caution.

I am constrained to conclude that under the doctrine of the *Greenberg Case, supra,* irrespective of the intention of the parties, the alleged alimony composition agreement was not approved by the court in the manner required by law and consequently is not a bar to the petitioner's right to apply for alimony at this time; that even if such approval had been properly obtained, nevertheless the husband must respond in alimony in view of the wife's destitution.

The defendant's answer in lieu of plea will accordingly be overruled and his motion to strike the petition, denied.

Submit an order on notice, in accordance herewith. I will fix the amount of alimony to be paid by the defendant to the petitioner on proof of her needs and the defendant's faculties, which proof may be submitted in accordance with the usual practice of this court.

In view of the fact that an appeal may be taken, I will sign an order reopening the final decree and amending the decree *nisi,* by including therein a provision for temporary, nominal alimony, so that the defendant may present his case for consideration to the court of errors and appeals without delay. Upon determining what the amount of permanent alimony should be, the same will be included in the instant order by addition thereto as a footnote.