**C.S., Petitioner**

v.

## **DEPARTMENT OF PUBLIC WELFARE, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Feb. 25, 2009.

Decided May 1, 2009.

 

BEFORE: LEADBETTER, President Judge, SMITH–RIBNER, PELLEGRINI, COHN JUBELIRER, SIMPSON, LEAVITT and BUTLER, JJ.

OPINION BY Judge COHN JUBELIRER.

C.S. petitions for review of an order of the Department of Public Welfare (DPW), Bureau of Hearings and Appeals (BHA), which adopted an Administrative Law Judge's (ALJ) recommendation and dismissed C.S.'s appeal of his request for expungement of the indicated report of child abuse made against him with the Childline Registry. BHA relied on the factual findings of the Philadelphia County Court of Common Pleas—Family Court Division (family court) in a dependency hearing in upholding the indicated report that C.S. physically abused his son, C.S., Jr. (minor). BHA did not conduct an administrative hearing on the merits in this matter. On appeal, C.S. argues that BHA erred in dismissing his appeal without holding an administrative hearing on the merits because DPW had to prove with substantial evidence that he was the perpetrator of abuse of the minor. C.S. contends that it was an error to rely on the findings of the family court, which found him to be the perpetrator of abuse by the lesser standard of prima facie evidence.

The relevant facts are as follows. C.S. is the father of the minor, born September 2, 2006. On November 17, 2006, the Philadelphia Department of Human Services (DHS) filed a Child Protective Service Investigation Report (Report) showing that the minor was physically abused on November 14, 2006, while in the care of C.S. and the minor's mother. C.S. and the minor's mother were both named as the perpetrators of the abuse. The report reflected that the case status was "indicated" based upon medical evidence. DHS pro-

Franklin A. Bennett, III, Philadelphia, for petitioner.

Howard Ulan, Deputy Chief Counsel, Harrisburg, for respondent.

vided the following explanation for the indicated status:

> Social worker learned from the hospital that the child was admitted with acute subdural hematoma, acute ret[i]nal hemorrhaging, and healing rib fractures: impairment, severe pain, serious physical injury. Doctor's examinations at the hospital concluded that the injuries were consistent with a high suspicion of child physical abuse. The alleged perpetrator father denied causing the injuries, but admitted that the child was in his and the mother's care when the first symptoms of the child's injuries appeared. The alleged perpetrator mother denied causing the injuries, but admitted that the child was in her and the father's care when the first symptoms of the child's injuries appeared. Neither gave any reasonable explanation for the injuries.

(Child Protective Service Investigation Report at 2.) On January 22, 2007, C.S. appealed to BHA and requested a hearing to determine whether the indicated report of abuse was accurate.

In the interim, the family court conducted a judicial dependency hearing on March 12, 2007. On April 17, 2007, the family court adjudicated the minor dependent, committed the minor to DHS, and "concluded that DHS presented clear and convincing evidence that [the minor] was abused and presented prima facie evidence that the parents were the perpetrators of the abuse." *In re: C.S., a Minor, Appeal of C.S., Sr., Father,* (C.P. Pa., Family Ct. Div., No. D33480611, filed July 13, 2007) (Family Ct. Op.), slip op. at 9. The family court stated:

> In this case, there is clear and convincing evidence that [the minor] was abused. . . .
>
> . . . .
>
> Here, [the minor] clearly meets the definition of an abused child. Dr. Di-

Giorgio–McColgan gave extensive testimony about the nature and extent of [the minor]'s injuries. All of the injuries, subdural hemorrhage, retinal hemorrhage, and a fracture of the posterior ribs, were serious injuries that could have possible long-term visual and development defects on [the minor]. She testified that these are the types of injuries that occur from the shaking of a child. They are the hallmark features for a type of child abuse commonly known as Shaken Baby Syndrome. Dr. DiGiorgio–McColgan also testified that the injuries were not caused by [the minor]'s premature birth and that it was incredibly unlikely that the injuries were caused by an accidental trauma. Therefore, the Court found that there is clear and convincing evidence that [the minor] was abused.

> There is also *prima facie evidence* in this case that the *parents were the abusers* of [the minor] . . . .
>
> Here, [the minor] has suffered serious physical injury which could not have been sustained without [the minor] being shaken by someone. While the Court *could not determine with absolute certainty* that the parents were the ones who injured [the minor], Dr. DiGiorgio–McColgan did testify that [the minor] *probably* would have been symptomatic when the shaking occurred, which is when [the minor] was with his parents and that, *while it is possible,* it is less likely that [the minor] would have been shaken earlier in the day by someone else and not had any symptoms until 3:00 a.m. when he was with his *parents.* Furthermore, there was no evidence presented to show that [the minor]'s other caretakers that day were the possible abusers of [the minor]. Mr. Bucher testified that none of the caretakers whom he interviewed during his investigation, Edna Parker [who is the minor's day

care provider], the maternal grandmother, and the paternal grandmother and paternal great-grandmother, aroused his suspicion as the possible perpetrators of abuse. The parents also did not raise any concerns about Edna Parker or any of the other relatives and the parents had a good relationship with Edna Parker. Therefore, *the Court found that there is prima facie evidence that the parents had abused [the minor].*

(Family Ct. Op., slip op. at 7–9 (emphasis added).) C.S. appealed the family court's order adjudicating the minor dependent to the Superior Court.

The Superior Court affirmed the family court's dependency adjudication and stated that the only evidence needed to support the finding that C.S. abused the minor was "that [C.S.] *may have* caused the abuse" and it was because the allegations against C.S. were "[l]eft uncontradicted and unexplained" that C.S. was found to be responsible for the abuse. *In Re: C.S., Jr., a Minor, Appeal of C.S., Sr., Father,* (Pa.Super. No. 1353 EDA 2007, filed December 31, 2007) (Superior Ct. Op.), slip op. at 2, 4 (emphasis added). The Superior Court further stated that "[i]t is true that there is a possibility—although not a probability—that the abuse took place several hours before the symptoms manifested themselves; however, there is unrebutted *prima facie* evidence that the parents as primary caretakers are responsible." (Superior Ct. Op., slip op. at 3).

■ On January 8, 2008, DHS filed a motion to dismiss C.S.'s appeal of the indicated report. Generally, the Child Protective Services Law (CPSL), 23 Pa.C.S.

§§ 6301—6386, provides that when an indicated report of abuse is filed with the ChildLine Registry, the alleged perpetrator has a statutory right to a hearing on the merits.[1] However, DHS argued that C.S.'s appeal of the indicated report should be dismissed because it would be a collateral attack on the family court adjudication, which was affirmed by the Superior Court. On January 10, 2008, a hearing on the motion to dismiss occurred in lieu of a hearing on the merits. Subsequently, the ALJ for DPW issued an adjudication and recommendation to dismiss C.S.'s appeal. The ALJ relied on this Court's decision in *J.G. v. Department of Public Welfare,* 795 A.2d 1089 (Pa.Cmwlth.2002), and stated:

In *J.G.,* the family court found that the child was abused, but it did not decide who committed the abuse. In response, the Commonwealth Court ordered that the appellant have a hearing before the BHA on the sole issue of whether the appellant committed the abuse.

If the *J.G.* court believed that a family court decision on identity could not preclude a BHA appeal because of the prima facie part of the burden of proof, it would have said so. Instead, it indicated that the reason for the remand was because the family court made no finding on the identity of the perpetrator. In other words, the fact that the *J.G.* court spent time analyzing whether the family court identified the perpetrator means that if the family court did identify the J.G. appellant as the perpetrator, then J.G.'s appeal would have been denied. In the instant case, the family court identified [C.S.] as the perpetrator.

---

1. Section 6338(a) of the CPSL, 23 Pa.C.S. § 6338(a), provides that after a report of suspected child abuse is determined to be an indicated report, the information contained in the pending complaint file shall be expunged immediately, "and an appropriate entry shall be made in the Statewide central register.

Notice of the determination must be given to the subjects of the report, . . . [and] shall also inform the recipient of *his right, within 45 days after being notified of the status of the report, to appeal an indicated report, and his right to a hearing if the request is denied."* 23 Pa.C.S. § 6338(a) (emphasis added).

(ALJ Adjudication at 6, February 5, 2008 (citations omitted).) On February ·11, 2008, BHA adopted the recommendation of the ALJ in its entirety, and dismissed C.S.'s appeal. C.S. now petitions this Court for review.[2]

On appeal,[3] C.S. argues that he should have been afforded a hearing on the merits of the expungement before BHA. C.S. contends that, in dependency proceedings, the county agency need only prove that C.S. was the perpetrator of abuse by *prima facie* evidence, while, in expungement proceedings, which are fundamentally different from dependency proceedings, DPW must prove that C.S. was the perpetrator of abuse by *substantial evidence.* C.S. argues:

> A dependency court proceeding is different from a BHA appeal of [an] indicated [report on] the ChildLine Registry. In a dependency case the state has the best interest of the child in mind when determining if abuse occurred so that it might step in and protect the child immediately and protect that child from any party who may have hurt or may continue to hurt [the] child. A p[r]ima facie level of evidence for the best interests of the child ... is acceptable since society has an overwhelming interest in keeping children immediately safe from someone who may hurt them. The legislature contemplated this when setting the standard of proof as prima facie.
>
> In contrast, the legislature requires a higher level standard of proof of substantial evidence for a person to be placed on the ChildLine Registry. The two are mutually exclusive.

(C.S.'s Br. at 10.) Because of the differences in the proceedings and the burdens of proof, C.S. argues that BHA erred in relying on the family court's factual finding that C.S. was the perpetrator of abuse.

In opposition, DPW argues that a perpetrator, who is identified in a dependency proceeding, like C.S. was in this case, cannot collaterally attack a judicial proceeding in which he is so identified. DPW contends that this Court, in *K.R. v. Department of Public Welfare,* 950 A.2d 1069

---

**2.** This Court's review of an expungement request "is limited to a determination of whether constitutional rights were violated, whether errors of law were committed, or whether necessary findings of fact are supported by substantial evidence." *K.R. v. Department of Public Welfare,* 950 A.2d 1069, 1073 n. 6 (Pa.Cmwlth.2008) (quoting *E.D. v. Department of Public Welfare,* 719 A.2d 384, 387 (Pa.Cmwlth.1998)).

**3.** We note that on January 15, 2009, in preparation for oral argument, this Court ordered the parties, and invited several entities who work in the area of child protective services, to file briefs addressing the following issues:

    1.) Whether a finding of fact or conclusion of law rendered in a dependency proceeding should have any preclusive effect in an expungement hearing before the Bureau of Hearings and Appeals.

    2.) Whether a finding of abuse in a dependency proceeding should be binding on the Bureau of Hearings and Appeals in an expungement proceeding when the trial court in the dependency proceeding makes no finding of fact that a specific parent was the perpetrator of the abuse of the child.

    3.) Whether the issue preclusion analysis should be different in an expungement hearing brought to challenge an indicated report than in one brought to challenge a founded report.

    4.) Whether a prima facie finding of abuse should have preclusive effect in an expungement hearing challenging an indicated report of abuse.

(Per Curiam Order, filed January 15, 2009.) In response to our Order, the parties filed supplemental briefs, and the following entities filed briefs amici curiae: Juvenile Law Center and Community Legal Services; Support Center for Child Advocates; and Philadelphia County Department of Human Services. Indeed, the briefs amici curiae aided this Court in examining the complex and important legal issue raised by C.S.

(Pa.Cmwlth.2008), recently rejected a similar argument in which a parent argued that the finding that she was a perpetrator of abuse in a dependency adjudication should not be used in the expungement action because the prima facie evidence standard was lower than the substantial evidence standard. As such, DPW asks this Court to likewise reject C.S.'s argument made on appeal.

It is important to begin our discussion by examining the difference between dependency proceedings and expungement proceedings. In dependency proceedings, which are held pursuant to the Juvenile Act, 42 Pa.C.S. §§ 6301–6375, the county agency first has the burden of establishing through clear and convincing evidence that a minor was abused, but then need only prove the identity of the perpetrator by prima facie evidence. *K.R.*, 950 A.2d at 1075. The Superior Court has defined the prima facie evidence standard in dependency cases as a mere presumption "that the abuse normally would not have occurred except by reason of acts or omissions of the parents." *In re R.P.*, 957 A.2d 1205, 1218 (Pa.Super.2008) (quoting *In the Interest of J.R.W.,* 428 Pa.Super. 597, 631 A.2d 1019, 1024 (1993)).

■ By contrast, in expungement proceedings, the county agency or DPW has the burden of proving by substantial evidence that the alleged perpetrator's conduct falls within one of the definitions of child abuse set forth in Section 6303(b)(1) of the CPSL. *E.D. v. Department of Public Welfare*, 719 A.2d 384, 388 (Pa.Cmwlth. 1998). Section 6303(a) of the CPSL defines an "indicated report" as a child abuse report based on a determination by the county agency or the Department that, "*substantial evidence* of the alleged abuse exists." 23 Pa.C.S. § 6303(a). For the purpose of an expungement proceeding, substantial evidence is "[e]vidence which outweighs inconsistent evidence and which

a reasonable person would accept as adequate to support a conclusion." *D.T. v. Department of Public Welfare*, 873 A.2d 850, 853 (Pa.Cmwlth.2005). Thus, the standard for determining the identity of a perpetrator in dependency matters is a significantly lower burden of proof than in expungement proceedings. The different burdens of proof set forth for the proceedings highlight the fundamentally different purposes that dependency proceedings and expungement proceedings serve.

The Juvenile Act, which governs dependency proceedings, is focused on taking swift action in removing children from a neglectful or abusive home. The Juvenile Act is a procedural act establishing jurisdiction in the courts to legally intervene in cases where children are neglected and the only available resource for custody, change of custody, or detention of a child who is suspected of being abused under the CPSL. The Juvenile Court, through the Juvenile Act, is empowered to remove children from the family environment when necessary for their welfare or in the interest of public safety. *Interest of J.R.W.,* 428 Pa.Super. 597, 631 A.2d 1019, 1022 (1993). Thus, the prima facie evidence standard for the identity of a perpetrator is acceptable in order to readily protect an abused child, once that abuse has been proven by the higher standard of clear and convincing evidence.

By contrast, the purpose of the CPSL, which is invoked in a request for an expungement of an indicated report of abuse, is to bring about quick and effective reporting of suspected child abuse so as to serve as a means for providing protective services competently and to prevent further abuse of the children. 23 Pa.C.S. § 6302(b). The CPSL is geared more towards reporting perpetrators of abuse, which may adversely affect a perpetrator's reputation and employment opportunities.

*A.Y. v. Department of Public Welfare,* 537 Pa. 116, 125 n. 7, 641 A.2d 1148, 1152 n. 7 (1994); 23 Pa.C.S. § 6338(a). As the Supreme Court in *A.Y.* explained,

> Although less process is due in an administrative proceeding than where criminal charges have been brought, an administrative adjudication of suspected child abuse is of the most serious nature. Therefore, this society, which was founded upon, *inter alia,* its citizens' 'inherent and indefeasible rights ... of acquiring, possessing and protecting property and *reputation,*' cannot blithely surrender those rights in the name of prosecutorial convenience.

*A.Y.,* 537 Pa. at 124, 641 A.2d at 1152 (footnote omitted) (quoting Pa. Const. art. I, § 1). Thus, the higher standard of proof required in an expungement proceeding to prove the identity of a perpetrator is reasonable in light of his "inherent and indefeasible rights" which may be negatively affected.

Recently, in *K.R.,* this Court concluded that BHA could rely on the factual findings from a dependency adjudication to serve as the basis for upholding a founded report of abuse where there was substantial evidence presented to the juvenile court that K.R. abused her children. There, BHA dismissed K.R.'s appeal of her request for expungement of the child abuse findings against her based on the factual findings made by a trial court in a dependency proceeding. Specifically, the court found as fact that:

> [K.R.] has systematically inculcated both children with fabricated, unsubstantiated and exaggerated concerns of their father which created an unhealthy fear that their father would harm them. This non-ending behavior by [K.R.] caused [M.F.] to suffer a spastic colon and withholding behaviors and resulted in [A.F.] being diagnosed with depression and anxiety. [K.R.] has further harmed the children by subjecting them to examinations by psychiatrists, physicians and counselors, in part, to further legitimize her quest to prevent the children from having any relationship with their father.
>
> ....
>
> The most compelling evidence that [K.R.] is the source of the [minors] problems is their testimony and their vastly improved condition after being removed from [K.R.'s] care. Foster care placement and supervised visits have virtually eliminated the [minor]'s fears of their father. A.F. calls [the father] Dad. The [minors] excelled in the ... School District. M.F. suffers from only mild constipation. A.F. is generally much happier and no longer suffers from headaches.
>
> ....
>
> The [minors] are adjudicated dependent because clear and convincing evidence has been presented that the [minors] are without proper parental care or control from either parent necessary for their physical, mental or emotional health and such care and control from either parent is not immediately available.

*K.R.,* 950 A.2d at 1072 (quoting Trial Ct. Op. at 18–20).

On July 16, 2007, BHA dismissed K.R.'s appeal of her request for an expungement of a founded report. BHA explained:

> Specifically, an Order issued by the [trial court] in which the Court found Appellant "systematically inculcated both [minors] with fabricated, unsubstantiated, and exaggerated concerns of their father which created an unhealthy fear that their father would harm them". Further, the Court found the non-ending behavior by Appellant caused M.F. to suffer a spastic colon and withholding behaviors, and A.F. was diagnosed with depression and anxiety. The Court also

found Appellant "further harmed the [minors] by subjecting them to examinations by psychiatrists, physicians, and counselors, in part, to further legitimize her quest to prevent the [minors] from having any relationship with their father". Finally, the subject [minors], A.F. and M.F., were adjudicated dependent [minors] because there was clear and convincing evidence the [minors] were "without proper parental care or control from either parent necessary for their physical, mental, or emotional health and such care and control from either parent is not immediately available". See 23 Pa.C.S.A. § 6303 for definition of "Founded"; see also *R.F. v. DPW*, [8]01 A.2d 646 (Pa.Commw.2002), and *J.G. v. DPW*, 795 A.2d 1089 (Pa. Commw.2002) (which describes the justification request to change the status of a child abuse report from "Indicated" to "Founded").

*K.R.*, 950 A.2d at 1073 (quoting BHA Order, July 16, 2007). On appeal to this Court, K.R. asserted that BHA denied her a statutorily mandated administrative hearing to challenge the evidence against her regarding the care and custody of her children. This Court addressed the issue of whether BHA could rely on factual findings made in a dependency proceeding, and not in a separate administrative hearing, to establish that K.R. abused her children.

In addressing this issue, this Court examined *J.R.W.* and *J.G.* In *J.R.W.*, the Superior Court held that the factual findings from a dependency adjudication may serve as the basis for upholding a founded report of abuse. In *J.R.W.*, a minor was adjudicated dependent after the trial court found the minor was unquestionably an abused "shaken baby" and had suffered life-threatening injuries while in the care and custody of her parents. *Id.* at 1021. On appeal, the parents did not contest the dependency finding; rather, they argued

that the trial court erred in finding that they were responsible for the abuse of their child. Initially, the parents argued that the CPSL did not provide a means to adjudicate abuse. Alternatively, the parents argued that, if the Juvenile Act gives the trial court jurisdiction to make a finding of abuse, the identity of the abuser may not be established on a prima facie basis, but must be established by clear and convincing evidence. *Id.* The parents argued that the finding by the trial court that they abused their child could not establish a basis for a "founded" report of child abuse. Specifically, the parents argued that because Section 6381(d) of the CPSL, 23 Pa.C.S. § 6381(d), "establish[es] that abuse may be proven by a standard of prima facie evidence, [it] is not applicable to a finding of abuse under the [Juvenile] Act, which [must be proven with] clear and convincing evidence." *Id.* The Superior Court held that it was clear that under the Juvenile Act, which incorporates the later additional legislation relating to child abuse provided under the CPSL, "the Juvenile Court has the jurisdiction and the right to adjudicate child abuse and when such an adjudication is made pursuant to the [CPSL], *a "founded report" may be lodged with the Department of Welfare determining that the parents are the persons responsible for the abuse.*" *J.R.W.*, 631 A.2d at 1025 (emphasis added).

This Court, in *K.R.*, also examined our decision in *J.G.*, in which this Court ultimately remanded the case to BHA for a hearing on the identity of the perpetrator. We explained in *J.G.* that:

an indicated report of child abuse was filed against J.G. Following a dependency hearing, the status of the report was changed from "indicated" to "founded." In the dependency adjudication, the trial court found:

In the case at bar, the testimony is uncontradicted, unequivocal and well-beyond the clear and convincing standard that A.M. was abused. The fact that there is no direct evidence to implicate the mother is not dispositive. It is clear from the testimony that the injuries that were inflicted occurred sometime while this child was under the supervision and control of both parents. Moreover, the agency has established by clear and convincing evidence that the child is presently without proper parental care or control and that such care or control is not immediately available. Therefore, the Court will issue a decree adjudicating this child as dependent.

*J.G.*, 795 A.2d at 1093. As a result of this change in status from "indicated" to "founded," the Bureau did not hear J.G.'s appeal as to the indicated report. It further concluded that J.G. had no right of appeal from the founded report. J.G. then appealed to this Court.

On appeal, this Court found that although a perpetrator in an indicated report of child abuse has a right to appeal a denial of an expungement request under the [CPSL], "there is no corresponding provision within the [CPSL] for perpetrators named in a 'founded report' of child abuse. This statutory omission does not mean that a named perpetrator in a founded report does not have any right of appeal." *J.G.*, 795 A.2d at 1092. We further found that a founded report of child abuse is an adjudication and that, under Section 504 of the Administrative Agency Law, 2 Pa.C.S. § 504, "[n]o adjudication of a Commonwealth agency shall be valid as to any party unless he shall have been afforded reasonable notice of a hearing and an opportunity to be heard." *Id.* While we held that there was a right to appeal, we specifically noted that in a criminal proceeding, where there is an entry of a guilty plea or *nolo contendere* or a finding of guilt to a criminal charge involving the same factual circumstances involved in the allegation of child abuse, an appeal would "in most instances, constitute a collateral attack of the adjudication itself, which is not allowed." *J.G.*, 795 A.2d at 1093. This holding was made subject to a distinction, which we explained as follows:

Where, however; a founded report is based upon a judicial adjudication in a non-criminal proceeding, such as a dependency action, in which the court enters a finding that the child was abused, but does not issue a corresponding finding that the named perpetrator was responsible for the abuse, a named perpetrator is entitled to an administrative appeal before the secretary to determine whether the underlying adjudication of child abuse supports a 'founded report' of abuse. We emphasize that the scope of the appeal is for the limited purpose of determining whether or not the underlying adjudication supports a founded report that the named perpetrator is responsible for the abuse and would not permit a named perpetrator to collaterally attack or otherwise challenge the underlying judicial adjudication.

*Id.* at 1093. This Court held in *J.G.* that because the dependency adjudication relied upon by DPW merely indicated a finding that A.M. was abused, and did not contain a definitive finding that J.G. was guilty of that abuse, J.G. was entitled to an administrative hearing to determine whether the adjudication of abuse constituted sufficient evidence to support a founded report that J.G. committed that abuse. *Id.* Accordingly, we reversed the order of DPW and remanded to DPW for purposes of conducting an administrative hearing to determine

if sufficient evidence existed to support a founded report that J.G. committed abuse. *Id.* at 1094.

*K.R.*, 950 A.2d at 1077–78.

After a thorough examination of the purpose behind the Juvenile Act, the burdens of proof in dependency adjudications, and relevant case law, we concluded that BHA could rely on the factual findings in that dependency proceeding to dismiss K.R.'s expungement request because the extensive testimony and factual findings in that dependency adjudication established that K.R. abused the minors. *K.R.*, 950 A.2d at 1078. Specifically, we held that:

pursuant to this Court's decision in *J.G.*, K.R. is not entitled to an administrative proceeding as it would be a collateral attack on the factual findings from the dependency adjudication. . . . K.R. and DPW were both given a full and fair opportunity to present their evidence, and K.R. was given a full and fair opportunity to rebut evidence of abuse and neglect. To allow K.R. an administrative hearing to confront the very same witnesses and to challenge the very same evidence of abuse, which she has already been given an opportunity to refute, would be a collateral attack on the trial court's factual findings, which is prohibited pursuant to *J.G.* Therefore, due process does not require an administrative hearing, as the material facts found in the dependency proceeding cannot be disputed.

*K.R.*, 950 A.2d at 1080 (citation omitted).

■ Contrary to DPW's position, our decision in *K.R.* does not require this Court to affirm BHA's order and dismiss C.S.'s appeal. In *K.R.*, we specifically held that "if the findings made in the dependency proceeding in this case establish that K.R. abused the minors, it is unnecessary to provide K.R. with a separate administrative hearing to establish that K.R. abused the minors." *Id.* at 1078. This

Court now recognizes that this statement was not fully explained in *K.R.* Thus, we wish to clarify that a separate administrative hearing before BHA is not necessary if there is *substantial evidence* to support the findings made in the dependency proceeding that the appellant was the perpetrator of the abuse of the minor. In *K.R.*, there was substantial evidence presented at the dependency hearing to support the finding that K.R. was the perpetrator of abuse. The one and only perpetrator named was K.R. herself. Additionally, "19 witnesses testified at the dependency adjudication, including K.R., the minors, several doctors, and caseworkers." *Id.* at 1079. The findings of fact made in the dependency adjudication were quite extensive, and the trial court determined, without question, that K.R. was the perpetrator of abuse. The trial court found, among other things, that K.R. did everything in her power to keep the minors from having a relationship with their father. For example, she made false reports alleging that the minors were abused by the father; caused the minors to fear their father based on fabricated and unsubstantiated claims; and subjected them to unnecessary examinations by doctors and counselors. *Id.* at 1073, 1079. The trial court found that "the non-ending behavior by [K.R.] caused M.F. to suffer a spastic colon and withholding behaviors, and A.F. was diagnosed with depression and anxiety." *Id.* at 1073. Because of the overwhelming evidence identifying K.R. as the perpetrator of abuse, there was no legal reason to justify granting K.R. another hearing before the BHA. To do so would have caused the minors to relive the abuse they endured at the hands of K.R. and clearly violated the principles of collateral estoppel. Accordingly, because there was substantial evidence presented to the trial court that K.R. abused the minors, this Court was correct in affirming the denial

of a separate administrative hearing before BHA.

■ The factual findings made by the family court in this case are in stark contrast to those made by the trial court in *K.R.* Unlike in *K.R.* where K.R. was the sole person indicated as the perpetrator of abuse, here, C.S. was never specifically named as the perpetrator of abuse. Instead, the family court found that "the parents" of the minor were indicated as the perpetrators of abuse. However, we note that there is no finding that the parents, alone or together, abused the minor. Further, there was little evidence presented that C.S. physically harmed the minor. Unlike the trial court in *K.R.*, the family court in this case readily admits its uncertainty that C.S. was the perpetrator of abuse when it states that it *"could not determine with absolute certainty* that the parents were the ones who injured" the minor. (Family Court Op., slip op. at 9 (emphasis added).) Further, the family court stated that, based on the expert witness's testimony, the minor *"probably* would have been symptomatic when the shaking occurred, which is when [the minor] was with his parents and that, *while it is possible,* it is less likely that [the minor] would have been shaken earlier in the day by someone else and not had any symptoms until 3:00 a.m. when he was with his *parents."* (Family Court Op., slip op. at 9 (emphasis added).) The family court also noted several other individuals who cared for the minor in the hours leading up to the time that the minor exhibited his symptoms of being shaken. However, because none of those caretakers aroused any suspicion by the case worker, the family court found that there was prima facie evidence that *the parents* had abused the minor. While the family court found enough evidence to satisfy the prima facie

standard, the evidence fell far short of the substantial evidence standard necessary to prove that C.S. abused the minor.

Here, in order to deny C.S. expungement of the indicated report on the Child-Line Registry, DHS or DPW must prove by *substantial evidence* that C.S. abused the minor, and cannot rely on the factual findings made by the family court that C.S. was the perpetrator of abuse based on prima facie evidence. Not only did the family court state that the standard used to identify C.S. as the perpetrator was prima facie evidence, but the family court's opinion was clear that its findings were not supported by substantial evidence. While this Court is aware that there may be a repetition of the evidence in the expungement proceeding, due process requires an expungement hearing to proceed.

Because the family court did not make a specific finding that C.S. was the perpetrator of abuse of the minor supported by substantial evidence, we must vacate the BHA's order dismissing C.S.'s appeal, and remand for a hearing before the BHA at which time DHS or DPW has the burden to prove, by substantial evidence, that C.S. abused the minor.[4]

### ORDER

**NOW,** May 1, 2009, the order of the Department of Public Welfare, Bureau of Hearings and Appeals, in the above-captioned matter is hereby vacated and this matter is remanded for a hearing before Bureau of Hearings and Appeals to determine whether there is substantial evidence to support the indicated report that C.S. was the perpetrator of abuse.

Jurisdiction relinquished.

---

4. Of course, C.S. is not permitted to attack the family court's finding that the minor was abused because this finding was based on clear and convincing evidence.

DISSENTING OPINION BY Judge BUTLER.

I respectfully disagree with the majority's conclusion that "[b]ecause the family court did not make a specific finding that C.S. was the perpetrator of abuse of the minor supported by substantial evidence, we must vacate the BHA's order dismissing C.S.'s appeal, and remand for a hearing before the BHA at which time DHS or DPW has the burden to prove, by substantial evidence, that C.S. abused the minor." Majority Op. at 1264, n. 4.

More specifically, it is my view that there was a specific finding by The Philadelphia County Court of Common Pleas—Family Court Division (family court), which was affirmed by the Pennsylvania Superior Court, that C.S. was the perpetrator of abuse of the minor—not the sole or exclusive perpetrator but, nevertheless, that C.S. was the perpetrator. Moreover, it is my view that the specific findings were supported by substantial evidence. And additionally, in my view, the majority erred in the following characterization of the "proof" requirement in this case:

> Here, in order to deny C.S. expungement of the indicated report on the Child Line Registry, DHS or DPW must prove by *substantial evidence* that C.S. abused the minor, and cannot rely on the factual findings made by the family court that C.S. was the perpetrator of abuse based on prima facie evidence.

Majority Op. at 1264. *But see In Interest of J.R.W.*, 428 Pa.Super. 597, 631 A.2d 1019, 1024 (1993) (wherein the Superior Court noted that the prima facie "standard of establishing abuse by the caretakers, coupled with the clear and convincing evidence necessary to find dependency, has been imposed by the Legislature as the standard which the Juvenile Court must apply in deciding abuse cases" *as the fact of abuse "must be established by clear and convincing evidence"*).

This is a petition by C.S., Sr., (Petitioner), the father and indicated perpetrator of the abuse of a minor referred to herein as C.S. The petition requests this Court's review of an Order and Decree of the Pennsylvania Department of Public Welfare (DPW), Bureau of Hearings Appeals (BHA), affirming an Administrative Law Judge's (ALJ) dismissal of Petitioner's appeal from the decision of the Philadelphia Department of Human Services (DHS) and the DPW to file an indicated report of child abuse against the father with the Childline Registry. More specifically, the BHA concluded that Petitioner's appeal should be dismissed because it constituted an improper collateral attack against the finding by the Philadelphia Family Court that Petitioner abused C.S.

Petitioner contends that "BHA erred in dismissing Petitioner's appeal, finding that the related dependency case was a collateral attack when the related dependency case applies a lower standard of proof than the BHA appeal." Petitioner's Brief at 9. The majority characterizes the issue slightly different:

> On appeal, C.S. argues that BHA erred in dismissing his appeal without holding an administrative hearing on the merits because DPW had to prove with substantial evidence that he was the perpetrator of abuse of the minor. C.S. contends that it was error to rely on the findings of the family court, which found him to be the perpetrator of abuse by the lesser standard of prima facie evidence.

Majority Op. at 1255–56.

DHS filed an indicated report of child abuse with the Childline Registry against Petitioner as the father of C.S., the child in question. DHS also filed a dependency petition against the father on behalf of C.S. In the related dependency matter, a decision was issued in Philadelphia Family

Court finding that DHS presented *clear and convincing evidence* that the subject child was abused, and that *prima facie evidence* was presented that the parents were the perpetrators of the abuse. The Pennsylvania Superior Court affirmed the family court decision. *In Re: C.S., Jr., a Minor, Appeal of C.S., Sr., Father*, (Pa.Super. No. 1353 EDA 2007, filed December 31, 2007). With regard to the indicated report, Petitioner filed an appeal with the BHA, challenging DHS' filing of the indicated report with the Childline Registry. To reiterate, the latter referenced appeal was dismissed by the BHA, and is now before this Court on a petition for review.

The BHA, adopting the recommendation of the ALJ in its entirety, held that Petitioner's appeal should be dismissed because it constituted an unlawful collateral attack against the finding by the Philadelphia Family Court that C.S. was abused by Petitioner. Excerpts from the findings of the ALJ explain with considerable clarity, the legal issues.

> In the instant case, the Philadelphia Court of Common Pleas—Family Court Division held that [Petitioner] committed child abuse against subject child. The Pennsylvania Superior Court affirmed this decision. Since the family court already decided the issue that is the subject of [Petitioner's] appeal with the BHA [(*i.e.*, the existence of child abuse and the identification of the father as the perpetrator of that abuse)] [Petitioner's] BHA appeal is a collateral attack on the family court judgment.
> [Petitioner] argues that the family court decision does not affect the BHA case because of *the different burden of proof.* [(Emphasis added)]. Specifically, in family court, prima facie evidence is the burden of proof used to identify a perpetrator of abuse. In a BHA case, the burden of proof is substantial evidence. Since substantial evidence has been defined as preponderance of the evidence,

it is a higher burden of proof than prima facie.

> However, the prima facie burden of proof in family court is part of a two step standard of proof. Specifically, the issue of whether a child has been abused is decided using the clear and convincing standard. If abuse is found, then, the identity of the perpetrator is decided using the prima facie standard. The Pennsylvania Superior Court explained this split burden of proof: [in] *In the Interest of J.R.W.*, 428 Pa.Super. 597, 631 A.2d 1019, 1024 (1993).
> As such, family court uses a higher or comparable burden of proof. The clear and convincing standard is higher than the BHA's substantial evidence standard. After there is clear and convincing evidence of abuse, the Legislature determined with the above-[referenced] appellate court's approval that the likelihood of anyone committing the abuse other than a custodian of the child is so small that prima facie is sufficient against a custodian of the child.
> Furthermore, the more serious impact of a family court's decision in comparison to that of a BHA decision indicates that the principle of collateral attack applies.

Adjudication of ALJ at 5.

So, from my perspective, the issue before this Court is somewhat straightforward. Did the BHA err as a matter of law when it held that the appeal by C.S.'s father should be dismissed because it was an improper collateral attack on the Philadelphia Family Court decision?

This issue is very similar to one of the issues raised and discussed in this Court's opinion in *K.R. v. Department of Public Welfare*, 950 A.2d 1069 (Pa.Cmwlth.2008). In *K.R.*, this Court held, *inter alia*:

> before a court can make a determination that a child is dependent because of

child abuse, the burden is on the petitioner to show that the juvenile was abused by clear and convincing evidence.

. . . .

While clear and convincing evidence is required to prove child abuse in a dependency adjudication, *the court's findings as to the identity of the abusers need only be established by prima facie evidence.*

*K.R.*, 950 A.2d at 1075 (emphasis added). (These issues were most recently addressed by this Court in *C.J. v. Department of Public Welfare* 960 A.2d 494 (Pa. Cmwlth.2008), which also cited, very approvingly, *K.R.;* note specifically pages 496 and 498–499 of *C.J.*).

In *K.R.*, this Court also referenced, and rejected, an argument that was very similar to that of the Petitioner in the case *sub judice.* In *K.R.*, "the appellants argued that if the Act affords the trial court jurisdiction to make a finding of abuse, the identity of the abuser may not be established on a prima facie basis, but must be established by clear and convincing evidence." *Id.* at 1076.

Petitioner's argument was also rejected by our Superior Court in the family court appeal related to the case *sub judice.*

DHS, for purposes of dependency, had to establish by clear and convincing evidence that child abuse occurred. *It did not have to establish by clear and convincing evidence that it was at Father's hand*; rather, DHS had only to establish a *prima facie case* that the abuse occurred as a result of Father's acts or omissions. In other words, if the burden of proof were the same to show *who*

caused the injuries and *whether* there were serious injuries caused, Father might have an arguable claim. While the evidence of the *injuries* caused must be proven by clear and convincing evidence, once that is shown, *prima facie* evidence is sufficient to establish that the primary caretakers are responsible. Left uncontradicted and unexplained, we conclude that DHS established a *prima facie* case against Father.

*In Re: C.S.*, slip op. at 4.

Moreover, in *K.R.*, this Court specifically addressed the issue of *due process* which is at the heart of Petitioner's argument against his being barred from collaterally attacking the decision of the family court.

Based on the principles set forth in *J.R.W.* and *J.G.* [*v. DPW*, 795 A.2d 1089 (Pa.Cmwlth.2002)], it is clear that the Secretary may rely on the factual findings of the trial court in a dependency adjudication to dismiss an appeal for a request for expungement. Here, similar to *J.G.*, K.R.'s appeal is from a "founded" report of child abuse and, thus, the issue before this Court is one of law regarding the due process owed. Accordingly, if the findings made in the dependency proceeding in this case establish that K.R. abused the minors, it is unnecessary to provide K.R. with a separate administrative hearing to establish that K.R. abused the minors.

*K.R.*, 950 A.2d at 1078.

Though there was only an "indicated report" of child abuse in this case involving C.S., as distinguished from the "founded report" in *K.R.* and *C.J.*, for purposes of our analysis in this case, the difference is not significant.[1] *See* Section 6303 of the

---

[1] Even though the DHS chose not to convert its "indicated report" of abuse to a "founded report," as the county agencies did in *K.R* and *C.J.*, the action of DHS was the judicial equivalent of converting its "indicated report" to a "founded report" for purposes of the instant petition for review, given the legislative deter-

mination that evidentiary findings of child abuse sufficient to support dependency adjudications are also sufficient to warrant and sustain founded reports of child abuse with the Childline Registry. Evidentiary findings sufficient to sustain founded reports of child

Child Protective Services Law, *as amended*, 23 Pa.C.S. § 6303; and Section 6302 of the Juvenile Justice Act, *as amended*, 42 Pa.C.S. § 6302. In each of the three cases there were judicial findings that there was clear and convincing evidence of dependency, and prima facie evidence of abuse. I agree with the ALJ that "family court uses a higher or comparable burden of proof," than that used in expunction proceedings before the BHA. (Adjudication of ALJ at 5).

So, this Court specifically rejected in *K.R.*, the Petitioner's argument herein, that "BHA erred in dismissing Petitioner's appeal based on collateral attack, since collateral attac[k] can not occur *when different standards of proof exist in each case.*" Petitioner's Brief at 8 (emphasis added). The different standards of proof in each case are not legally significant in the matter before the Court. As this Court's decision in *K.R.* (as applied in *C.J.*) should control the outcome herein, the order of the BHA should be affirmed. Therefore, I must dissent to the majority opinion which vacates the order of the BHA and remands for a hearing before the BHA.

abuse are certainly sufficient to sustain an indicated report.

Very much like the facts in *K.R.* and *C.J.*, in this case, there was an "indicated report" of abuse; a trial on the merits of dependency petitions, with findings of abuse based upon clear and convincing evidence, and a finding as to the identity of the abuser based upon prima facie evidence; there were appeals of the trial court's decisions to the Superior Court, which affirmed the trial court decisions; and there were collateral proceedings by the abusers challenging, unsuccessfully, the indicated/founded reports.

The only significant factual difference in the three cases was that after the trial court proceedings, the county agencies in *K.R.* and *C.J.* summarily changed the reports of abuse from "indicated" to "founded," based exclusively on the *adjudicated decisions* by the trial courts. For whatever reason, in *C.S.*, DHS did not make the summary change from "indicated" report to "founded" report. The latter notwithstanding, the evidentiary legal principles of *K.R.* and *C.J.* are very much applicable to this case. (As an aside, if DHS had chosen to convert the indicated report in this case to a founded report, this case would have been rendered moot because there is no right to appeal a founded report).